MORTON C. TUTTLE CO. *vs.* PIO CARBONE.

JULY 30, 1956.

PRESENT: Flynn, C.J., Condon, Roberts, Andrews and Paolino, JJ.

376

CONDON, J. This is an employer's petition to review a preliminary agreement for workmen's compensation for total incapacity. The petition is based on the ground that the employee's incapacity due to the injuries described in the agreement has ended or diminished. From a decree of the workmen's compensation commission affirming a decree entered by a single member of the commission, who originally heard and granted the petition on the ground that the employee's incapacity had ended, the employee has appealed to this court.

He has filed eight reasons of appeal substantially to the effect that the decree is against the law, the evidence and the weight thereof; that certain medical evidence was illegally admitted and considered; that it fails to do substantial justice; that it is without legal evidence to support it; and that it is otherwise contrary to the law and the evidence. However, in his brief he has summarized those reasons under the following points: 1. The trial commissioner erred in admitting and relying upon the testimony of Dr. Thomas C. McOsker. 2. The fair preponderance of the legal evidence fails to establish that the respondent's incapacity for work due to the injuries enumerated in the preliminary agreement has ended. 3. The decree entered by the single commissioner was not entered according to law and therefore

such decree and the full commission's decree affirming it are void. We shall consider only the issues thus briefed and argued.

It appears from the evidence that respondent was totally disabled on April 18, 1949 when he fell from a plank at the end of a scaffold while working as a laborer for petitioner. A preliminary agreement for total disability compensation was approved June 1, 1949 in which respondent's injuries were described as follows: "Cerebral concussion. Cont. of Scalp. Fracture 5th cervical vertebra, frac. surgical neck of the rt. humerus. Fract. 8th & 9th ribs. Db. fract. 10th lt rib. Frac. 11th & 12th lft rib. Fract. transvers process of the left 1st & 2nd lumbar vertebra. Fluid left chest." He was treated by Dr. Arthur E. Martin, an orthopedist, and thereafter by Dr. Wilfred Pickles, a neurosurgeon. The respondent never returned to work and while he was drawing compensation he suffered a cerebral thrombosis with hemiplegia on November 15, 1951. Thereafter he continued to receive compensation, apparently without question until the petitioner brought the instant petition.

On October 13, 1954 petitioner had Dr. Thomas C. McOsker, a neurosurgeon, examine respondent and he reported that at that time he had none of the injuries enumerated in the agreement but that neurologically he had a complete right hemiplegia. Doctor McOsker also reported that in his opinion there was no causal connection between the cerebral accident and the injuries which respondent had received at his employment in 1949. As a result of this report petitioner brought the instant petition claiming that respondent's present incapacity was not due to such injuries.

At the hearing before the single commissioner petitioner did not ask that Dr. McOsker's report be admitted in evidence but called him to testify as its first witness. After he was sworn and petitioner had propounded the first question to him with reference to his examination of respondent, respondent objected to the doctor being allowed to testify.

Such objection was based on the ground that petitioner had not complied with the following provision of public laws 1954, chapter 3297, article II, sec. 21: "The employee shall be entitled to a full, exact, signed duplicate copy of the medical report of the examining physician, which shall be mailed by the employer or carrier to the employee or his attorney forthwith upon receipt of the original report by the employer or carrier. Failure to do so shall make such report or evidence of such examining physician inadmissible if objection is made by the employee to the admission of the report or evidence."

The petitioner admitted that it did not mail forthwith to the respondent such a copy of Dr. McOsker's report of his examination of October 13, 1954 after it had received his report, but sent one sometime later which respondent conceded he had received on May 7, 1955. The single commissioner construed the statute as admitting of some flexibility and held that in the circumstances of the case before him there had been a substantial compliance with the statute. The full commission approved that ruling but added that even if it were erroneous there was other evidence in the record aside from Dr. McOsker's testimony which convinced them that respondent was no longer incapacitated by his original injuries.

The respondent contends that this is not a correct construction of the statute. He argues that the word "forthwith" means at least within a reasonably prompt time and that the delay until May 7, 1955 in mailing the copy of the report must be deemed unreasonable and therefore a failure to comply with the statute. This is a question of mixed law and fact and as such the finding of the commission in answer thereto is not final. This court is not precluded by the statute from ruling thereon.

The petitioner does not deny this. However, it does contend that we should not consider the question, because respondent did not object to the testimony as it was given but

contented himself merely with the one objection to Dr. McOsker testifying at all. The petitioner also argues that respondent made Dr. McOsker his own witness when, in cross-examination, he asked him a certain question on a precise matter on which the doctor had not been examined in direct examination and thus respondent lost the benefit of the statute.

Ordinarily there would be some merit in petitioner's contentions but in the light of the above-quoted provision of sec. 21 we think they are devoid of any merit here. Under the respondent's objection the question raised for determination was whether petitioner had the right to present Dr. McOsker as a witness who was competent to testify on any matter concerning his physical examination of respondent on October 13, 1954. At the very outset of petitioner's examination of Dr. McOsker on the witness stand, respondent quite properly objected when it became apparent that the doctor was going to be interrogated as to what he had learned from such physical examination and as to which he was incompetent as a witness under sec. 21. In these circumstances that one objection was sufficient to raise a question as to the admissibility of any further interrogatories of the same nature. It was not necessary thereafter to repeat the objection to each question designed to elicit further testimony concerning what the doctor found or what opinions he formed as a result of his examination of respondent on October 13, 1954.

We now recur to the question raised by respondent. After careful consideration we are of the opinion that the legislature intended by the above-quoted provision of sec. 21 to assure to the injured employee knowledge of the results of a physical examination by the employer's physician as fully and promptly as to the employer. Manifestly the employee cannot receive it at precisely the same time as the employer or even immediately thereafter, because the statute provides that the duplicate copy of the physician's report shall

be mailed by the employer to the employee. However, it is equally clear that the legislature intended to shorten the interval by placing upon the employer the obligation to mail the duplicate copy "forthwith," failing which it would forfeit the right to present the report in evidence or call the examining physician as a witness.

Whatever may be the usual meaning given to the word "forthwith," we think that it is used here in the sense of without unreasonable delay. We do not think that in all instances it necessarily means immediately on the day the employer receives the physician's report or even on the next day. In other words, circumstances may alter cases and what would be unreasonable delay in one case might be justly considered reasonable promptness in another. Whenever it appears that the delay has prejudiced the employee there can be no question that such delay, however brief, must be deemed a failure to comply with the statute. On the other hand, even though the delay appears to be unduly long it should not be deemed noncompliance if the employer can show that it was not unreasonable in the circumstances and that the employee was not thereby prejudiced.

In the case at bar there appears to have been a rather long delay. However, there were some extenuating circumstances which accounted for such delay. It was not the result of deliberate dilatoriness on petitioner's part. The respondent had changed his attorney before the physician's report was made and through oversight the petitioner sent a copy of the report to the former attorney instead of to the new attorney. This was unknown to respondent. It further appears that when apprised of its error petitioner promptly mailed a copy to respondent which he received on May 7, 1955. Since the hearing on the petition did not take place until a month later, in June, respondent had ample time to familiarize himself with the contents of the report and to take such steps as he thought necessary to counter or

otherwise minimize the opinions of Dr. McOsker expressed therein. In any event respondent makes no claim that he was prejudiced by the belated receipt of the report but appears to rely solely on the letter of the statute. In the circumstances we are of the opinion that the commission did not err in overruling respondent's objection.

The next question is whether the decree is contrary to the weight of the evidence. That question has been finally resolved by the full commission and this court is without authority to disturb their finding. *Brown & Sharpe Mfg. Co.* v. *Lavoie,* 83 R. I. 335, 116 A.2d 181. However, respondent also seems to argue under this heading that there is no legal evidence to support the decree and hence it is contrary to the law. We have considered this contention and after carefully reading the transcript we are of the opinion that it is without merit. Doctor Wilfred Pickles, who treated respondent after his cerebral accident, testified as follows: "I believe this last episode was due to a spontaneous cerebral thrombosis having no relation with the previous accident." As to the injuries which respondent received on April 18, 1949 and which were enumerated in the preliminary agreement he testified: "I believe this man has now recovered from the effects of the injury." He also testified: "He undoubtedly had residuals of these things, but he had recovered as far as giving him trouble."

Doctor McOsker testified that he had made a complete physical examination of respondent and found none of the injuries mentioned in the agreement but did find he was unable to do any work because of a complete right hemiplegia. He testified further that respondent's cerebral accident had no causal connection with the injuries he sustained in 1949.

Doctor Arthur E. Martin testified for respondent. His opinion differed from the opinions of Dr. Pickles and Dr. McOsker as to the cause of respondent's present admitted total disability. He made the latest physical examination

of respondent on June 28, 1955, the report of which is in evidence. As a result of such examination he concluded: "This man, as a result of his injury, has residuals of pain and limited motion in his mid and low back. He also is experiencing periodic headaches. * * * This patient is totally disabled to return to his work both by reason of his original injury and his cerebral vascular accident."

It is obvious from the above excerpts from the evidence that there was a conflict which the commission had to resolve. They chose to rely on the opinion of Dr. Pickles rather than that of Dr. Martin on the question whether respondent's injuries of April 18, 1949 were still disabling him, even though Dr. Pickles was not an orthopedist and notwithstanding that Dr. Martin's examination of June 28, 1955 was not only the latest but the only orthopedic examination made of respondent. The fact that neither Dr. Pickles nor Dr. McOsker is an orthopedist does not preclude the acceptance of their testimony as to whether respondent is still suffering from the injuries enumerated in the preliminary agreement. The fact that Dr. Martin is an orthopedist and they are not goes only to the weight of their testimony on that point. It was within the exclusive province of the commission to determine this question. They have determined it in favor of petitioner and we cannot say that there is no legal evidence to support their decision.

The next question which respondent raises is that the decree of the single commissioner was not entered in accordance with the provisions of P. L. 1954, chap. 3297, art. III, sec. 3 (g), with reference to the single commissioner's decision and the entry of a decree thereon. Under those provisions the commissioner is required to file his decision within ten days after the hearing is concluded, unless the parties otherwise agree, and to mail a notice thereof forthwith to the parties. It is further provided: "Within seventy-two hours of the mailing of the notice, exclusive of Sundays and holidays, the commissioner shall enter a decree upon

the decision, which shall contain findings of fact, but within that time any party may appear and present a form of decree for consideration."

The single commissioner decided this case on July 22, 1955. The decree was not entered upon that decision until July 29, 1955. It is admitted that this was more than seventy-two hours after notice of the decision had been mailed to the parties. The respondent insists upon the letter of the statute which he argues is absolutely mandatory. Hence, he contends that all the proceedings before the single commissioner were thereby rendered null and void.

In our opinion this is not a reasonable construction of the statute. The result of such a construction in and of itself shows that it could not have been the intention of the legislature. The statute places the duty squarely upon the commission to enter the decree within a specified time. However, it imposes no duty in respect thereto upon the parties. Are they to be bound by the failure of the commissioner to perform such duty and then be forced to the expense and inconvenience of a hearing *de novo*? Merely to state this is an absurdity. In our opinion the primary purpose of the statute. was to insure prompt decisions by the commissioner and thereafter speedy entry of decrees thereon so that the parties would be left in no doubt as to whether proceedings before the commissioner were finally concluded. And in the event he neglected to perform his duty it would be within their province to initiate proceedings to compel the performance thereof. In this sense it is a mandatory statute for the benefit of the parties. In the sense for which the respondent argues it would be a detriment, especially to the successful party.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded

to the workmen's compensation commission for further proceedings.

*Worrell & Hodge, Paul H. Hodge,* for petitioner.

*DeSimone & DeSimone, Florie DeSimone, Herbert F. DeSimone,* for respondent.