Julius A. Ramonas and Ingrida Ramonas, Plaintiffs-Appellees, v. Albert Kerelis and Alfonsas Kerelis, d/b/a Kerelis Construction Company, Defendants-Appellants.

Gen. No. 52,090.

First District, First Division.
November 18, 1968.

Frederick S. Stein, of Chicago, for appellants.

Blumenthal and Schwartz, of Chicago (Milton M. Blumenthal and Arthur F. Schwartz, of counsel), for appellees.

MR. JUSTICE ADESKO delivered the opinion of the court.

This is an action concerning an arbitration award rendered in favor of the plaintiffs. The controversy arbitrated arose out of a contract which contained a clause providing that any disagreement between the parties should be submitted to arbitration under the rules of the American Arbitration Association, or the American In-

stitute of Architects. Defendants appeal from the judgments entered in the Circuit Court of Cook County on September 27, 1966, and on December 21, 1966, confirming an arbitration award in favor of plaintiffs.

On March 14, 1962, Kerelis Bros. Construction Co., as contractor, and Dr. & Mrs. Julius A. Ramonas, as owners, entered into an agreement for remodeling work on plaintiffs' property. The agreement was signed solely by Alfonsas Kerelis as contractor, and by the aforementioned owners. Article 9 of the contract provided:

"CORRECTION OF WORK

"The Contractor shall re-execute any work that fails to conform to the requirements of the contract and that appears during the progress of the work, and shall remedy any defects due to faulty materials or workmanship which appear within a period of one year from the date of completion of the contract. The provisions of this article apply to work done by subcontractors as well as to work done by direct employees of the Contractor."

Article 19 of the contract provided:

"ARBITRATION

"Any disagreement arising out of this contract or from the breach thereof shall be submitted to arbitration, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other. The arbitration shall be held under the Standard Form of Arbitration Procedure of The American Institute of Architects or under the Rules of the American Arbitration Association."

On March 3, 1966, the plaintiffs instituted arbitration proceedings in accordance with the rules of the American Arbitration Association by serving a demand for arbitration upon the defendants and filing copies thereof with the Association. In the demand for arbitration, the plaintiffs contended that the addition to their property was carelessly and negligently constructed by defendants and in a poor unworkmanlike manner, and was not in accordance with the plans or in compliance with the Building Code. The defendants, after receiving notice of the commencement of arbitration proceedings, informed the Association in writing that they would not participate in the proceedings.

A hearing was scheduled by the appointed arbitrator for April 27, 1966, and notices were sent to the parties. The defendants did not appear. At the hearing plaintiffs presented witnesses and evidence to substantiate their claim and damages. Shortly after the hearing, the defendants were advised by the Association that the arbitrator would afford them an additional opportunity to submit any evidence to him for his consideration, and that he would also be willing to arrange for another oral hearing if the defendants so desired. The defendants did not respond. On June 20, 1966, the arbitrator rendered an award in favor of the plaintiffs and against the defendants in the amount of $6,895 and $225 costs. A copy of the award and the arbitrator's opinion was forwarded to the defendants on the same day. The arbitration award was not paid, and plaintiffs instituted proceedings in the Circuit Court on July 20, 1966, to have the award confirmed and judgment entered thereon. Defendants were served on August 2, 1966, and on August 31, 1966, they filed their motion to dismiss the plaintiffs' application for confirmation of the arbitration award. The defendants' motion was predicated upon the proposition that the arbitration proceedings were null and void under Illinois law because it constituted an attempt to oust the jurisdic-

tion of the courts over disputes which were not in existence at the time the contract was entered into and was therefore against the public policy of this State.

On September 27, 1966, the trial court held a full hearing on the matter. The court, in denying defendants' motion, stated that the Uniform Arbitration Act, Ill Rev Stats 1965, c 10, §§ 101–123, passed on August 24, 1961, changed the public policy and law of our State, so that a provision in a written contract after that date to submit future controversies to arbitration is valid and enforceable and not against the public policy of our State. The court then confirmed the arbitration award and entered judgment in favor of the plaintiffs and against the defendants, Albert Kerelis and Alfonsas Kerelis, individually and doing business as Kerelis Construction Company, in the sum of $7,120 and costs of suit.

Thereafter, on October 20, 1966, the defendants filed a petition to vacate the judgment. In their petition, the defendants alleged for the first time that one of the defendants, Albert Kerelis, was not a party to the contract, had never signed the contract, and that the award should not have been made against him. Defendants also alleged that on July 28, 1962, the contractor (Alfonsas Kerelis) completed all work on the premises, and on that date the plaintiffs paid the balance due and accepted all work done, that more than one year had elapsed from the date of the completion of the work, and that by the terms of the contract, specifically Article 9 and Article 12, the contract became inoperative after July 28, 1963, this being one year after the work was completed. Article 12 of the contract provided, among other things:

"PAYMENTS

". . . The making and acceptance of the final payment shall constitute a waiver of all claims by the Owner, other than those arising from unsettled liens or from faulty work appearing thereafter, as pro-

267

vided for in Article 9, and of all claims by the Contractor except any previously made and still unsettled. . . ."

Plaintiffs' answer to the petition denied the allegations contained therein, and affirmatively stated that all matters alleged by the defendants in their petition should have been presented by them to the arbitrator in the arbitration proceedings and not to the court. A hearing was set for November 15, 1966, at which time the defendants were ordered by the court to file an amended petition to vacate the judgment, which they did on November 23, 1966. The hearing was then continued to December 21, 1966. In defendants' amended petition to vacate the judgment, defendants, in addition to what was previously set forth in the original petition, alleged for the first time that in the arbitration proceedings, the arbitrator erred in determining the amount of the plaintiffs' award by including therein an allowance for architectural fees and attorney fees. Plaintiffs' answer to the amended petition stated that they were totally unaware of how the arbitrator had computed the amount of his award, and at no time had requested attorney fees nor knew that attorney fees were included in the lump sum award. Plaintiffs again stated the defendants were late in raising this matter, as this should have been brought to the attention of the arbitrator.

At the hearing on the amended petition to vacate and the answer thereto, counsel for the plaintiffs informed the court that the plaintiffs were willing to agree to a correction and modification of the award and judgment as to any error made by the arbitrator in computing damages. On December 21, 1966, the trial court denied the amended petition filed by the defendants and ruled that the matters contained therein should have been presented to the arbitrator in the arbitration proceedings and that the failure of the defendants to do so was of their own

choosing. The court also ordered that the judgment heretofore entered in the cause in favor of the plaintiffs "be and the same is hereby amended nunc pro tunc as of September 28, 1966, to read that the plaintiffs, Julius A. Ramonas and Ingrida Ramonas, have judgment against the defendants, Albert Kerelis and Alfonsas Kerelis, individually and doing business as Kerelis Construction Company in the sum of $5,620.00 and costs of this suit." The trial court had deleted $1,000 of attorney fees and $500 of architectural fees from the award.

On appeal defendants contend (1) that the dispute was not subject to arbitration; (2) that since one of the defendants, Albert Kerelis, did not sign the contract of March 14, 1962, there was no basis for the arbitrator to proceed against him, or enter an award against him, and the court had no authority to enter judgment against him and (3) the judgment was contrary to law.

We consider first the question of whether the dispute was subject to arbitration. Prior to the adoption of the Uniform Arbitration Act, on August 24, 1961, Illinois followed the common-law rule that agreements to arbitrate future disputes divested courts of their jurisdiction, and had refused to enforce such contractual agreements as contrary to public policy. Interstate Bakeries Corp. v. Bakers, Cracker, Pie and Yeast Wagon Drivers Union, 31 Ill2d 317, 201 NE2d 452 (1965). Section 1 of the Uniform Arbitration Act, Ill Rev Stats 1965, c 10, § 101 provides:

"Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract."

269

It is therefore apparent the statute has removed the public policy objections upon which the common-law rule was based. An agreement in a contract to arbitrate future disputes arising out of the contract, entered into after August 24, 1961, is valid and enforceable. School Dist. No. 46 v. Del Bianco, 68 Ill App2d 145, 215 NE2d 25 (1966). "The basic intention of our Arbitration Act is to discourage litigation and foster the voluntary resolution of disputes in a forum created, controlled and administered by the agreement to arbitrate and by the statute." Flood v. Country Mut. Ins. Co., 89 Ill App2d 358, 232 NE2d 32 (1968). The contract between the parties was entered into after the adoption of the Uniform Arbitration Act, and the terms of Article 19 of the contract specifically provided for the arbitration of "any disagreement arising out of this contract or from the breach thereof." The Act was deemed a part of the contract the same as though such Act was expressly incorporated therein. The dispute between plaintiffs and the defendants regarding defects in workmanship was irrevocably committed to arbitration pursuant to Article 19 of the contract.

Defendants' argument that payment by the plaintiffs on July 28, 1962, constituted acceptance of the completed work and that the only remaining obligation of the defendants was to cure any defects arising from their work for a one-year period thereafter is without merit. Article 12 of the contract specifically states that payment is not a waiver of "faulty work appearing thereafter." Likewise, defendants' contention that the contract was inoperative after July 28, 1963, is deceptive. Article 9 of the contract expressly states that the defendants ". . . shall remedy any defects due to faulty materials or workmanship which appear within one year from the date of completion of the contract." Therefore all defects appearing within one year from the completion date are the

responsibility of the defendants, and their obligation to remedy those defects continues after the expiration of the one year when they fail or refuse to make repairs on legitimate complaints which occurred within the one year period. Plaintiffs presented evidence to the arbitrator during the course of the arbitration proceedings that the defects in workmanship appeared before the expiration of the one-year period after the work had been completed.

■ Defendants were notified of these defects before the expiration of the one-year period, yet the defendants failed to remedy them. It is our opinion that the contract did not come to an end on July 28, 1963, thereby rendering the arbitration clause inoperative. Under the above circumstances, defendants cannot now assert their obligation to remedy past defects has terminated due to the passage of time, that the contract was no longer operative, that the arbitration provision was no longer in effect, nor that the arbitrator had no authority to proceed in the matter. We do not believe that defendants' refusal to arbitrate released them from their agreement to do so pursuant to Article 19 of the contract.

■■ It will be observed that neither of the defendants bothered to appear at the arbitration proceedings. Although defendants were given every opportunity to participate in the proceedings, they refrained from doing so, and as a consequence, the arbitrator proceeded to examine the dispute ex parte. While neither party may prevent the rendition of a binding arbitration award by his default in appearing at the proceedings, such award, if rendered in compliance with all legal requirements, is a complete, final, and binding determination of a controversy which was properly before the arbitrator. Springs Cotton Mills v. Buster Boy Suit Co., 275 App Div 196, 88 NYS2d 295 (1949). It is our opinion, and we so hold, that where an agreement to arbitrate is incident to the

main agreement of the parties, and one of the said parties, without fault on the part of the other, fails and refuses to proceed with the portion of the agreement providing for arbitration, then such other party may proceed to establish his claim before the arbitrator regardless of the nonappearance of the other party. See Minton v. Mitchell, 89 Cal App 361, 265 P 271 (1928).

Considered next is defendant Albert Kerelis' contention that since he did not sign the contract, there was no basis for the arbitrator to proceed against him or to enter an award against him, and that the court had no authority to enter judgment against him. At the outset, we note that in defendants' written motion to dismiss plaintiffs' application for confirmation of arbitration award in the trial court, submitted on August 31, 1966, the defendants admit they had entered into a written contract with the plaintiffs on March 14, 1962. Pertinent provisions of the motion are as follows:

> ". . . 2. That it affirmatively appears from the Application that it is based on an Arbitration Award pursuant to a contract entered into by and between the parties on the 14th day of March, 1962. . . .

> "5. That the contract entered into between the parties on March 14, 1962, was completed, the work accepted, and the contract price paid by the plaintiffs to the defendants and their subcontractors. . . ."

In the affidavit of defendants' counsel in support of defendants' motion to dismiss plaintiffs' application for confirmation of arbitration award, also dated August 31, 1966, it is stated:

> ". . . 2. That on March 14, 1962, the plaintiffs and defendants entered into a contract whereby the defendants agreed to furnish labor and material in

272

building an addition to the property of the plaintiffs in accordance with the architectural drawings prepared by Albert Kerelis."

However, on October 20, 1966, the defendants filed a petition to vacate the judgment, wherein they alleged that Albert Kerelis was not a party to the contract since the contract was executed solely by Alfonsas Kerelis. Defendants assert in their brief that since Albert Kerelis did not sign the contract and had no interest in the subject matter, the arbitration award and judgment against him was invalid. Evidently the arbitrator concluded that Albert Kerelis was in fact a party to the contract pursuant to the evidence presented by the plaintiffs at the arbitration proceedings. We agree with the trial court that defendants had their opportunity to present their contentions and arguments to the arbitrator but voluntarily chose not to do so. The matters alleged by the defendants should have been presented by them to the arbitrator in the arbitration proceedings and not to the trial court. In refusing to appear, both defendants acted at their own peril, and Albert Kerelis' defense that he did not sign the contract nor was a party to the contract was lost due to a situation of his own creation. In International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Shapiro, 138 Conn 57, 82 A2d 345 (1951), quoting from Sturges, Commercial Arbitration & Awards, p 449, it was stated:

> "(I)f a party contests the jurisdiction of the arbitrators, and withdraws; or, if he never appears for that reason; he may be caught in this situation: he may lose in his defense to the proceedings to enforce the award or in his direct proceedings to vacate the award; the jurisdiction of the arbitrators may be sustained against his objection. In such case, he will not have been heard, and will have no further opportunity to be heard, upon the merits of his case."

273

We concur with the above quoted provision, and upon careful review of the record before us, we find no merit to defendant Albert Kerelis' contention.

Defendants' final contention is that the judgment is contrary to law because the arbitrator exceeded his powers by including in the award $1,000 attorney's fees and $1,000 architect's fees, the award could not be altered by the court, and that the court should have vacated the award in toto pursuant to section 12 of the Uniform Arbitration Act. Ill Rev Stats 1965, c 10, § 112.

The allowance for fees was unknown to the plaintiffs at the time of the award but became known several months later through a letter from the arbitrator to the American Arbitration Association. Upon being apprised of this error in computing damages, plaintiffs informed the court they were willing to have the award and judgment modified, whereupon the court corrected the award by reducing the amount of the architectural fees and eliminating entirely the attorney fees.

█ █ We do not believe the arbitrator exceeded his powers, nor that the award should be set aside. When the award of an arbitrator conforms with the submission, and no fraud or mistake appears on its face, the award will not be interfered with or set aside for errors of law or fact. Podolsky v. Rashin, 294 Ill 443, 128 NE 534 (1920). Where miscalculation in assessing damages has been committed by the arbitrator, and such miscalculation is of such a character as not to affect the merits of the controversy on the matters submitted, the court may reduce the award at the request of the party in whose favor that award was given. Section 13 of the Uniform Arbitration Act, Ill Rev Stats 1965, c 10, § 113, vests the court with the power to modify or correct an award under the following circumstances:

> "(a) Upon application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

"(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

"(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

"(3) The award is imperfect in a matter of form, not affecting the merits of the controversy. . . . "

The trial court did not commit error by reducing the award to eliminate a miscalculation by the arbitrator in computing damages.

We therefore conclude that the judgment and orders of the trial court in the instant case are correct and that they should be and they are hereby affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.