319 A.2d 358.

PROVIDENCE TEACHERS UNION, LOCAL 958—AMERICAN
FEDERATION OF TEACHERS, AFL-CIO *vs.*
DAVID R. McGOVERN, *City Treasurer.*

PROVIDENCE TEACHERS UNION, LOCAL 958—AMERICAN
FEDERATION OF TEACHERS, AFL-CIO *vs.*
SCHOOL COMMITTEE OF THE CITY OF PROVIDENCE,
RHODE ISLAND.

MAY 13, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

170

KELLEHER, J. We have consolidated these two appeals. They are sequels to our decision rendered in the matter of *Providence Teachers Union, Local 958* v. *School Committee*, 108 R. I. 444, 276 A.2d 762 (1971). In 1968 the Providence Teachers Union, Local 958, American Federation of Teachers, AFL-CIO (union) entered into a one-year collective bargaining agreement[1] with the Providence School Committee then in office. A special election was held in August 1968 in which voters expressed a preference for an "appointed" Providence School Committee (committee). That body soon thereafter replaced the "elected" committee which had negotiated the contract with the union.

The bargaining agreement contained severance pay provisions. Eleven teachers who had retired sought to take advantage of such provisions. The committee repudiated the provisions because, of an alleged unavailability of funds in the city till. The union challenged the disavowal by

---

[1]The agreement was effective for the period September 1, 1968 through August 31, 1969.

invoking the arbitration process set out in the agreement. An extensive hearing was conducted, and a majority of arbitrators ordered the payment of the retirement benefits, *i.e.*, the severance pay. The committee challenged the action of the arbitration panel and the Superior Court affirmed the arbitrators' award. On appeal to this court, we held that the retirement award was a proper provision to be included within the contract, that the alleged lack of funds afforded no legal basis for the committee's unilateral disavowal of the 1968 agreement, and that the Superior Court's affirmation of the arbitrators' award is a judgment[2] which must be honored like any other judgment under G. L. 1956 (1968 Reenactment) §28-9-24.

Thereafter, the union made demand upon the city council and/or the city treasurer[3] (treasurer) for the payment of the judgment. After the expiration of 40 days, said judgment remaining unpaid and unsatisfied, the union brought this action in Superior Court pursuant to G. L. 1956 (1970 Reenactment) §§45-15-5 and 45-15-6 for debt on the judgment obtained.

After the treasurer filed an answer to the complaint denying its allegations, the union moved for summary judgment pursuant to Super. R. Civ. P. 56. The motion was granted by the trial justice because the issues raised before him presented pure questions of law. The treasurer has appealed from the order granting the motion for summary judgment.

The treasurer argues that the underlying agreement which has given rise to the litigation at bar is void and, therefore,

---

[2] On June 1, 1971, judgment was entered for the union against the committee in the amount of $59,555.25 plus $6,367.71 interest and costs.

[3] The treasurer was an original party in the prior litigation. However, the trial justice there granted the treasurer's motion to dismiss the suit as to him. The dismissal was without prejudice to the retirees' right to take whatever steps might be necessary to obtain satisfaction of the award.

unenforceable in that the contract failed to conform to the requirements of certain sections of the Providence City Charter. The union's response is that, since the earlier committee case has already determined that the agreement was valid and enforceable, the doctrine of res judicata precludes the relitigation of the issue and, therefore, is dispositive. We do not agree.

It is probably more accurate to characterize the effect, if any, that the prior judgment would have on this case as one based upon the doctrine of collateral estoppel rather than res judicata. The latter doctrine involves the effect of a final judgment between the parties to an original action and those in privity with such parties; the doctrine would normally be invoked in a subsequent action based upon the same claim or demand. Res judicata bars the relitigation of all the issues that were tried or might have been tried in the original suit. *Perez* v. *Pawtucket Redevelopment Agency,* 111 R. I. 327, 302 A.2d 785 (1973); *Goloskie* v. *Sherman,* 108 R. I. 730, 279 A.2d 409 (1971). Collateral estoppel, on the other hand, is the doctrine which renders conclusive in a subsequent action on a *different* claim the determination of particular issues actually litigated in a prior action. We note the reasoning of Chief Justice Traynor in *Bernhard* v. *Bank of America Nat. Trust & Sav. Ass'n,* 19 Cal.2d 807, 122 P.2d 892 (1942), wherein the prerequisites for the application of collateral estoppel were set forth as follows: (1) an identity of issues; (2) a final judgment on the merits; and (3) an establishment that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action. It is evident that since the treasurer was neither a party to nor in privity with a party to the prior litigation, neither doctrine may be applied against him as a bar to his contesting the validity of the agreement. Nevertheless, the treasurer's contention that a collective bargaining agreement, executed

by a school committee and covering the terms of compensation of teachers, must conform to provisions of the city charter is without legal merit.

The provision with which we are dealing is Section 5 of the Providence Finance Act, P. L. 1945, ch. 1665, which reads as follows:

> "All purchases made and contracts executed by the *purchasing agent* shall be pursuant to a written requisition from the head of the office, department, or other agency whose appropriation is to be charged; and *no purchase order* shall be issued or *contract executed,* nor shall any other agreement purporting to obligate the city be entered into unless and until the controller certifies that there is to the credit of the department, board, commission, bureau, or other city agency concerned therewith a sufficient appropriation balance in excess of all unpaid obligations, to defray the cost of such supplies, materials, equipment, or contractual services; and unless and until the budget director certifies that the purchase is consistent with policies established in the budget." (emphasis added)

At the time of the execution of the agreement, the Providence School Department was operating with a deficit. Accordingly, the protector of the city's interests argues that Section 5 is applicable to collective bargaining agreements and that the 1968 agreement is null and void[4] because of an insufficiency of funds. However, we do not find Section 5 to apply to collective bargaining agreements.

A close reading of Section 5 reveals that the purpose of the section is to require that any purchase made or contract executed by the purchasing agent of the city of Providence be presented to the controller for his certification. Section

---

[4]Section 7 of the Act in pertinent part reads:

"Whenever any department * * * shall purchase or contract for any supplies, materials, or equipment contrary to the provisions of this act * * * such order or contract shall be void and of no effect."

4 of the same Act sets forth the duties[5] of the "purchasing agent" and indicates that the said official's duties relate solely to matters concerning supplies and equipment. Read in the context with the rest of Sections 4 and 5, the reference in Section 4(a) to "contractual services" obviously refers to only those "contractual services" dealing with supplies and equipment.

There is no mention whatsoever of collective bargaining agreements in Sections 4 and 5. Such agreements are not within the purview of a purchasing agent's function as embodied in Section 4 and, therefore, would also not be within the scope of the Section 5 requirements relied upon by the treasurer.

We shall reiterate what was stated in the first *School Committee* case in respect to the treasurer's argument that the agreement is void since the elected school committee[6] did not have a sufficient appropriation to fund the agreement. The lack of funds affords no legal basis for the committee's unilateral rejection of the 1968 contract. Public Laws 1968, ch. 203, sec. 11 provides as follows:

> "Within the limits of the total amount or the individual amounts appropriated by the city council for the purposes of the school department, the school commit-

---

[5]The duties of a purchasing agent enumerated in Section 4 are as follows:

    (a) To make all purchases of supplies, materials, equipment and con-contractual services.

    (b) Selling supplies, materials, and equipment not needed for public use.

    (c) Transfer of supplies, materials and equipment.

    (d) Control of all central storerooms.

    (e) Establishing and enforcing standard specifications.

    (f) Supervision and control of the municipal garage.

    (g) Supervision and control of the city printing and duplicating plant.

    (h) Inventory of all movable equipment on property of the city.

[6]The elected committee which negotiated the contract with the union had received its annual appropriation from the city council. We do not know the causes for the committee's financial plight.

tee shall have the authority and responsibility for the provision of all public school services; for the establishment of the classification and compensation of personnel; and for the expenditure of all school funds in accordance with law and the provisions of this act."

Once the city council furnishes the committee with its appropriation, the committee is then free to allocate the sums appropriated to it as it deems fit. The committee may not disregard the obligations it assumed when it took office in 1968.

The money due the retirees is a debt of the city which must be satisfied by its treasurer.

Since the issues presented to the trial justice by way of the affidavits in support of the motion for summary judgment raised only pure questions of law, the granting of the summary judgment in the matter was correct. We turn now to the committee's appeal.

On July 21, 1970 the union advised the committee by letter that there were 40 other teachers similarly situated as those in the first grievance to whom severance pay was due. By mutual agreement the resolution of the interests of these teachers was held in abeyance to await final outcome of the then pending controversy.

The collective bargaining agreement in Section 7-5.5 provides:

"7-5.5. The Committee agrees that it will apply to all substantially similar situations the decision of the arbitrator sustaining a grievance; the Union agrees that it will not present any grievance which is substantially similar to a grievance denied by the decision of the arbitrator. The cost of arbitration will be shared equally by the parties."

The union sought to take advantage of such provision in behalf of the 40 teachers. Once again, the arbitration procedure was necessary to resolve differences between the parties and demand was made for arbitration with the

American Arbitration Association requesting the severance pay. A hearing was held in Providence and there is no doubt that the committee received notice of the time and place of arbitration. The committee elected not to appear at the hearing. Nevertheless, the hearing was held ex parte. The arbitrators rendered a decision requiring payments to be made to the group of retired teachers, stating that the grievances of the employees then involved were identical in all aspects to the grievances presented in the earlier case and that Section 7-5.5 was clearly applicable and controlling of the issue.

Pursuant to §28-9-17 the union petitioned the Superior Court for an order confirming the award and directing that judgment be entered thereon. After a hearing on such petition, the award of the panel of arbitrators was confirmed. The committee appeals from such order.

Once again the argument is presented that the underlying agreement is void for failure to conform to the Providence City Charter. Since the judgment on the merits in the first *School Committee* case is conclusive not only to the issues which were determined, but as to all matters which might have been determined as well, the doctrine of res judicata acts as a bar to the relitigation of the issue before us. The city charter issue clearly could have been raised in the prior proceedings. *Perez* v. *Pawtucket Redevelopment Agency, supra.*

It will be observed that the committee did not appear at the arbitration hearing. Although it was given every opportunity to participate in the proceedings, it refrained from doing so, and as a consequence, the arbitrator decided to examine the dispute ex parte. In refusing to appear, the committee acted at its peril. Neither party may prevent the rendition of a binding arbitration award by his default in appearing at the proceedings. *Ramonas* v. *Kerelis,* 102 Ill. App.2d 262, 243 N.E.2d 711 (1968). Such

award, if rendered in compliance with all legal requirements, is a complete, final, and binding determination of a controversy which was properly before the arbitrator. *Springs Cotton Mills* v. *Buster Boy Suit Co.*, 275 App.Div. 196, 88 N.Y.S.2d 295 (1949).

However, the committee takes the position that the arbitration proceedings did not adhere to all legal requirements in that the arbitration panel failed to comply with the time limits set forth in the agreement. It argues that such limits are mandatory and jurisdictional to the arbitrators' ability to render a binding award, in that if the specific time requirements were not met, the arbitrator was without power to act in the matter.

Section 7-5.3 states as follows:

> "The arbitrators shall call a hearing to be held within ten (10) days after their appointment * * *."

The neutral arbitrator[7] was appointed on January 26, 1972. On that date he directed that a hearing be held on the matter on March 2, 1972. The hearing then began, 36 days after his appointment. The delay is said to have been fatal to the legality of the arbitration proceedings and, therefore, the award should be vacated and deemed void. Such a position is erroneous.

We are of the opinion that the question of time in which the arbitrators were to call the hearing is not of such importance as to render the provisions mandatory as opposed to being merely directory. The sole purpose of the time provision in the submission contract is to have the matters speedily attended to by the arbitration panel. Provisions so designed to secure order, system and dispatch are gen-

---

[7]The agreement provided that both the union and the committee were to select an arbitrator. The two arbitrators so selected would in turn choose a "neutral" arbitrator. If disagreement occurred, the third would be chosen by the American Arbitration Association. The panel here comprised two members, the "union" man and the "neutral" who was selected by the Association.

erally held directory unless accompanied by negative words. *Cf. Broadriver, Inc.* v. *City of Stamford,* 158 Conn. 522, 265 A.2d 75 (1969). No negatives appear here. There is nothing contained in the provision which is naturally expressive of an intention to make compliance a condition precedent to action or to thereby create a limitation upon the arbitrators' power. No language invalidates a belated hearing. The provision relates to a matter of procedure.

Furthermore, the delay of a few days in commencing the hearing could not affect the rights of the parties, especially where one of the parties had already informed the panel of its refusal to participate. As no injustice, fraud, or injury is shown to have been done either party by the delay, we observe no reason for vacating the award on the basis asserted.

Finally, the committee directs our attention to §28-9-16, which lists the prerequisites to enforceability of the award. The pertinent aspect of §28-9-16 mandates that the *award* must be rendered "within the time limited in the submission or contract, if any." This part of the statute relates only to the time within which the final award must be rendered. The collective bargaining agreement required the arbitrators to give a decision within ten days after conclusion of the hearing. The hearing closed March 20, 1972, and the award rendered on March 28, 1972. There is no irregularity.

For the reasons contained herein, the appeals of the treasurer and of the committee are denied and dismissed.

Mr. Chief Justice Roberts did not participate.

*Grady and Kaplan Incorporated, James T. Grady,* Boston, Mass., *Eugene F. Toro,* for plaintiff-appellee.

*Louis A. Mascia,* City Solicitor, *Vincent J. Piccirilli,* for appellant, David R. McGovern; *Vincent J. Picirilli,* for appellant, School Committee of the City of Providence.