**375 A.2d 920.**
ALBERT BEAUCHESNE *vs.* DAVID LONDON & CO.

JULY 18, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This employer's appeal from a decree of the Workmen's Compensation Commission awarding benefits to an employee for injuries received at a company-sponsored Christmas party raises an issue of first impression in this jurisdiction. Hereafter we shall refer to the employer as "the company" and the employee by his last name.

The company, whose specialty is the sale of burlap bags and reconditioned barrels, is a family corporation whose ownership and management team consists of a father and his three sons. Beauchesne began working for the company in February of 1974 as a part-time employee and switched to full-time upon his graduation from high school. At the time Beauchesne began his full-time employment, he was 18 years old. On December 24, 1974, he attended the annual Christmas party, which was held in the third-floor offices of the company building, with pizza, soda, beer,

and whiskey being supplied by the company. About 2:30 in the afternoon the day's work was put aside, and the festivities commenced.

The employees were told that they could come to the party or leave for the day, as they chose, and that they would be paid for a full day. All the employees (five in number), as well as the London brothers, attended, although one employee left early without telling anyone. The others received a $10 bonus at the party, and the one who left was given his bonus later. Beauchesne apparently partook of the proverbial Christmas cheer, and sometime later in the afternoon became intoxicated. At about 4 p.m. he fell from a third-floor window and suffered a fractured skull, a fractured cervical spine, and severe damage to the arteries and veins in the area of the left knee. Subsequently, his left leg had to be amputated above the knee.

The trial commissioner's findings pertinent to this appeal are that Beauchesne was intoxicated on December 24, 1974; that he sustained his injuries "in the employment of the [company], connected therewith and referable thereto"; and that since December 25, 1974 he has been totally incapacitated. In turn these were affirmed by the full commission.

The company contends first that the full commission erred in affirming the trial commissioner's finding of fact that Beauchesne's injury occurred in the course of employment. We note at the outset that when we are asked to review the commission's findings, our role is limited to searching the record to see if there is any legal evidence to support the commission's findings, *Knowlton* v. *Porter Trucking Co.*, 117 R.I. 28, 362 A.2d 131 (1976). If there is, those findings cannot be disturbed absent fraud. *Gilbane Bldg. Co.* v. *Zorabedian*, 113 R.I. 129, 318 A.2d 466 (1974); *St. Laurent* v. *Kaiser Aluminum & Chem. Corp.*, 113 R.I. 10, 316 A.2d 504 (1974).

The company maintains that the injury was not in the course of employment because work had ceased for the day and attendance at the party was optional. We feel that these points are not in themselves determinative and that all the facts surrounding the party must be considered. An examination of the cases dealing with injuries suffered by employees while attending or traveling to and from employer-sponsored social or recreational events disclosed that generally jurisdictions are split on the question of recovery, but that basically each case is unique, turning on its own facts. See 47 A.L.R.3d 566 (1973).

Perhaps the most lucid opinion on the subject is *Moore's Case*, 330 Mass. 1, 110 N.E.2d 764 (1953). The court there set forth criteria to be examined in determining whether employment and recreational activity are sufficiently related to warrant an award. These factors are: (1) the "customary nature of the activity"; (2) the "employer's encouragement or subsidization" of it; (3) the employer's management or direction of the enterprise; (4) the "presence of substantial pressure or actual compulsion * * * to attend and participate"; and (5) whether the employer expects or receives a benefit from employee participation in the activity. *Moore's Case, supra* at 4-5, 110 N.E.2d at 766-67.[1] As the court there noted, "[w]hat is required in each case is an evaluation of the significance of each factor * * * in relation to the enterprise as a whole." *Id.* at 5, 110 N.E.2d at 767.

Professor Larson has observed in 1 Larson, *Workmen's Compensation Law* §22-11 at 5-63 (1972) that placing the activity "physically in contact with the employment environment" and associating "the time of the activity somehow with the employment" go a long way towards establishing a link between the recreation and employment. He

---

[1]The *Moore* court did not consider this to be an exhaustive list, nor do we.

notes that, having done this, "the exact nature and purpose of the activity itself does [sic] not have to bear the whole load of establishing work connection, and consequently the employment-connection * * * does not have to be as conspicuous as it otherwise might." *Id.*

We have said that an employee's injury is compensable if the peculiar facts and circumstances of a particular case establish a causal connection or nexus between the injury and the employment. We have also stressed that the term "causal connection" when employed in workmen's compensation cases does not carry the same connotation as does the term "proximate cause" when it is used as a term of reference in negligence actions. A causal connection or nexus can be established for the purposes of workmen's compensation if the conditions and nature of the employment contribute to the injury. To find a nexus, we first attempt to determine if the injury occurred during the period of employment at a place where the employee might reasonably have been and while he was reasonably fulfilling the duties of his employment or doing something incidental thereto or to the conditions under which those duties were to be performed. *Carvalho* v. *Decorative Fabrics Co.,* 117 R.I. 231, 366 A.2d 157 (1976); *Montanaro* v. *Guild Metal Prods., Inc.,* 108 R.I. 362, 275 A.2d 634 (1971); *Boullier* v. *Samsan Co.,* 100 R.I. 676, 219 A.2d 133 (1966). Compensation is not to be denied merely because the employee's injury occurred off the premises or at a time other than his regular working hours, but the facts and circumstances of each case will be examined with an eye to ascertaining if the record establishes a nexus or a link between the injury and the employment. *Lima* v. *William H. Haskell Mfg. Co.,* 100 R.I. 312, 215 A.2d 229 (1965).

It is obvious that when we take the criteria of the *Moore* case and apply them to the company's Christmas party,

we find the necessary nexus between Beauchesne's injuries and his employment. The party was held in the plant during a period usually reserved for work and for which the employees were actually paid. While the party may not be classified as an expressed "command performance" for the employees, one can certainly conclude, as did the commission, that their attendance was expected. The testimony giving rise to that inference rests on the facts that the weekly paychecks and the bonus checks were given to all of the employees at the party by one of the London brothers. Additionally, all employees and the three brother-employers attended. As one court has noted, "[l]iteral compulsory attendance at the company's affairs would not have produced the desired employee enthusiasm * * *. It would not be realistic to find that respondent's complete control of the [party] and the inducement to the employees of wages without work while enjoying the affair did not constitute a far greater and more effectual compulsion upon the employees" than mandatory attendance. *Kelly* v. *Hackensack Water Co.*, 10 N.J. Super. 528, 536, 77 A.2d 467, 471 (1950).

We come now to the question of what, if any, benefit the company might have expected to glean from the party. When the president of the company was asked if the goal of the Yuletide festivities was the promotion of good fellowship, he replied that such an event is a "common thing" and that "[w]e have always had a Christmas party." These responses were a clear indication that management felt that a Christmastime get-together financed by the company did much to create good will between labor and management. Certainly, improved employee relationships, which can and frequently do result from such activities, create a more congenial working atmosphere. *Kohlmayer* v. *Keller*, 24 Ohio St. 2d 10, 12, 263 N.E.2d 231, 233 (1970). This in turn produces greater

job interest and better service. Additionally, the expense of the party may constitute a business expense for income tax purposes and, as the *Kohlmayer* court observed, "[t]angible business benefits are even more likely to be realized where, as here, a small business is involved." *Id.* Thus, we agree with the proposition that benefits may accrue to an employer from a purely social affair. *Id.* at 13, 263 N.E.2d at 233; *Ricciardi* v. *Damar Prods. Co.*, 45 N.J. 54, 211 A.2d 347 (1965); *Hill* v. *McFarland-Johnson, Eng.*, 269 N.Y.S.2d 217 (1966). We are sure that almost up until the time the president saw the open window,[2] looked around, and observed Beauchesne lying on the first-floor platform everybody believed that the annual Christmas party was a great vehicle for promoting peace on earth and good will toward men.

The full commission found a nexus, and there is certainly evidence in the record which affords the requisite basis for this finding. In taking this position, we are well-aware of our holding in *Lawrence* v. *American Mut. Liability Ins. Co.*, 92 R.I. 1, 165 A.2d 735 (1960), where this court upheld the commission's denial of benefits to an employee who was injured while returning home from what he said was an outing given by his employer. The record in *Lawrence*, however, paints an evidentiary picture which differs considerably from that presented by Beauchesne. The outing attended by Lawrence was not sponsored by his employer. It was a joint outing held by two associations of company employees. The employees were not compelled to join either association, and while the employer agreed to make up any deficit incurred by those

---

[2]This was the second time that the president had gone to the window. Minutes before, he had left the executive suite and observed Beauchesne standing on the sill beside the open window. The president forcibly removed Beauchesne from the area and brought him back into the office.

658

in charge of the outing, it did not sponsor the event. Indeed, its personnel director, when asked if he thought the outing contributed to the welfare of his company, replied that that event was "a source of concern" to him and many other officers of the company and had been for some time. Thus, the *Lawrence* case affords no support for the position now taken by the company.

The second argument urged by the company is that even if Beauchesne was injured in the course of his employment, G.L. 1956 (1968 Reenactment) §28-33-2 precludes him from recovery. The statute provides that "[n]o compensation shall be allowed for the injury * * * of an employee where it is proved that his injury * * * resulted from his intoxication while on duty." The question before us is whether this provision constitutes an absolute bar to recovery or is unavailable to an employer who has authorized or condoned the drinking. Needless to say, the company favors the former view, citing in support thereof *Hopper* v. *F.W. Corridori Roofing Co.*, 305 A.2d 309 (Del. 1973), which ruled that the defense of intoxication is complete, leaving no room for estoppel.

The contrary view is exemplified by *McCarty* v. *Workmen's Compensation Appeals Bd.*, 12 Cal. 3d 677, 527 P.2d 617, 117 Cal. Rptr. 65 (1974). California Labor Code §3600(d) contains a provision comparable to §28-33-2, and the *McCarty* court reasoned that an employer's approval of and consent to drinking amount to an " 'implied representation that the employer will not hold it against the employee if he drinks, and will not deprive him of his job or his compensation benefits if he does so.' " *Id.* at 685, 527 P.2d at 622, 117 Cal. Rptr. at 70.

It seems to us that this latter rationale is more persuasive than that presented in *Hopper*, particularly in this case, which falls squarely within the "course of employment" analysis discussed above, with all the *Moore* cri-

teria, as well as the Larson factors of time and place of the party, militating in favor of the employee. It is only fair to say that when a recreational activity is sufficiently employment-related to allow recovery and the employer permits the use of alcohol, he has elected to shoulder the risks occasioned by such "spirited" activity. We, therefore, conclude that §28-33-2 does not constitute an absolute bar to recovery and that in this case the company is estopped from raising it as a defense.

The company's final contention deserves a high mark for its ingenuity, but the same cannot be said for its logic. Beauchesne filed his petition for compensation benefits in early February 1975. The hearing began before the trial commissioner in late April 1975. Thereafter, the commissioner heard evidence on three additional occasions. The presentation of testimony concluded on August 5, 1975. The trial commissioner's decision was issued approximately 10 months later, and the full commission's decision was another 9 months in coming.

The company first points to the 19-month hiatus between the conclusion of the presentation of evidence and the filing of the full commission's decision and then claims that the actions taken by the trial commissioner and the full commission are directly contrary to the provisions of §§28-35-27 and 28-35-28. Section 28-35-27 specifies that the trial commissioner shall render his decision within 10 days after the hearing has concluded. Section 28-35-28 states that within the time fixed by the trial commissioner the appellant shall file reasons of appeal with the commission,[3] together with so much of the transcript as he deems pertinent. Within 10 days after the filing of the reasons of appeal and the transcript, the parties may file such briefs

---

[3]The times for filing the reasons of appeal and the transcript were extended three times by the trial commissioner, and these extensions were apparently given at the company's request.

and memoranda as they desire with the commission. According to §28-35-28, the commission has 10 days following the expiration of the 10-day period for the filing of briefs in which to file a decision.

The company complains that the failure of the commission to abide by the statutory timetable robs its finding as to Beauchesne's incapacity of any validity. It argues that what may have been true in the spring of 1975 may not necessarily be true 19 months later, when the full commission affirmed the trial justice's findings.

In our opinion, the time lag does not void the award. Sections 28-35-27 and 28-35-28 are designed to expedite justice, not straightjacket commissioners. We addressed a similar question involving the predecessor to §28-35-27 in *Morton C. Tuttle Co.* v. *Carbone*, 84 R.I. 375, 125 A.2d 133 (1956), where we observed that although the statute places a duty on the commissioner to act within certain time constraints, no burden is placed on the parties whereby they would be bound to bear the expense and inconvenience of a hearing de novo because of the commissioner's failure to perform his duty.

The question is somewhat analogous to that presented in *Providence Teachers Union, Local 958* v. *McGovern*, 113 R.I. 169, 319 A.2d 358 (1974), where we construed a provision in a collective bargaining agreement which specified that the first meeting of the arbitrators should be held within 10 days after their appointment. There we observed that since the purpose of the proviso was "to secure order, system, and dispatch," *Id.* at 177-78, 319 A.2d at 364, the proviso was directory rather than mandatory. Essentially, that is how we read §28-35-27's predecessor. *Morton C. Tuttle Co.* v. *Carbone, supra* at 384, 125 A.2d at 138. Although we noted in *Tuttle* that the statute in question was in a sense mandatory, in that a party could seek to compel a commissioner to comply with the time provisions, the

statute is not mandatory in the sense that failure to comply entirely voids the action taken, as, for example, failure of a party to give requisite notice of intent to bargain. *See Town of Tiverton* v. *Fraternal Order of Police, Lodge #23*, 118 R.I. 160, 372 A.2d 1273 (1977).

Since the company has apparently conceded that there is evidence to support the finding of total incapacity as of August 5, 1975, when testimony was concluded, and we have determined that the time lag does not void the award, our inquiry ends there.

We wish to point out, however, that the company was not remediless during the 19-month period to which it has alluded. First, the company could have initiated proceedings to compel the trial commissioner's compliance with §28-35-27. *Morton C. Tuttle Co.* v. *Carbone, supra* at 384, 125 A.2d at 138. And, secondly, the company could have invoked the terms of §28-35-45 and filed a petition for review and modification of the award.

The appeal is denied and dismissed, and the decree appealed from is affirmed.

*Abedon & Visconti Ltd., Girard R. Visconti,* for plaintiff.

*Keenan, Rice, Dolan, Reardon & Kiernan, H. Eliot Rice,* for defendant.