# ROADWAY EXPRESS, INC.
## v.
## RHODE ISLAND COMMISSION FOR HUMAN RIGHTS.
### No. 78–55–M.P.

Supreme Court of Rhode Island.

July 3, 1980.

Orlando Rodio, Providence, Kingston & Garrett, Robert W. Garrett, Boston, Mass., for plaintiff.

Dennis J. Roberts, II, Atty. Gen., Eileen Cooney, Sp. Asst. Atty. Gen., for defendant.

## OPINION

MURRAY, Justice.

The defendant Rhode Island Commission for Human Rights (commission) filed a petition for certiorari pursuant to G.L.1956 (1977 Reenactment) § 42–35–16, seeking review of a Superior Court judgment that dismissed the commission's administrative proceedings against the plaintiff Roadway Express, Inc. (Roadway). We issue the writ and have the pertinent records before us.

The facts leading to dismissal of the commission's proceedings are undisputed. On

November 27, 1972, Robert J. Garedo filed a charge with the commission, alleging that Roadway had violated the Rhode Island Fair Employment Practices Act when it fired him on August 9, 1972. The commission investigated that charge and in 1973 undertook two unsuccessful attempts to settle the matter. In December 1974 the commission initiated administrative proceedings against Roadway based on the charges filed by Garedo. Invoking its authority under G.L.1956 (1968 Reenactment) § 28–5–18,[1] the commission issued and served a complaint on Roadway in January 1975.

Shortly after receiving the complaint, Roadway filed a motion to dismiss the commission's proceedings based on the time limitation of § 28–5–18. Roadway claimed that the commission did not have jurisdiction over the complaint because it failed to issue it within the time limit imposed by § 28–5–18, which provides in part: "[a]ny complaint issued pursuant to this section must be so issued within one (1) year after the alleged unfair employment practices were committed." Although the complaint in this case was issued more than two years after the alleged unfair employment practices, the commission denied Roadway's motion to dismiss. Roadway appealed from denial of that motion to the Superior Court.

The Superior Court sustained Roadway's appeal because it interpreted the one-year provision of § 28–5–18 to operate as a bar to adjudication of complaints issued after that time. The commission then petitioned this court for a writ of certiorari. We issued the writ to review the interpretation of § 28–5–18 adopted by the Superior Court.

The intention of the Legislature controls our consideration of the mandatory or directory character of statutory provisions. *See Atlantic Refining Co. v. Director of Public Works*, 98 R.I. 167, 169, 200 A.2d 580, 581 (1964); *State v. Muldoon*, 67 R.I. 80, 92, 20 A.2d 687, 692 (1941); *see also Beauchesne v. David London & Co.*, 118 R.I. 651, 660–61, 375 A.2d 920, 924–25 (1977); *Tiverton v. Fraternal Order of Police, Lodge # 23*, 118 R.I. 160, 165, 372 A.2d 1273, 1276 (1977); *Morton C. Tuttle Co. v. Carbone*, 84 R.I. 375, 384, 125 A.2d 133, 138 (1956). If the words used in a statute are unambiguous and convey a clear and sensible meaning, we look only to those words to ascertain the intent of the Legislature. *State v. Ciarlo*, R.I., 409 A.2d 1216 (1980); *Little v. Conflict of Interest Commission*, R.I., 397 A.2d 884 (1979). Words used in a statute are accorded their plain and ordinary meaning unless a contrary intent appears on the face of that statute. *Id., Roe v. Affleck*, R.I., 390 A.2d 361 (1978).

The Legislature has used the word "must" in conjunction with the time period provided in § 28–5–18: "[a]ny complaint * * * must be so issued within one (1) year * * *." In common usage, the word "must" means commanded or compelled. *Webster's Third New International Dictionary* (1961). If we accord to the word "must" in § 28–5–18 its ordinary meaning, it appears clear that the Legislature intended the one-year period to operate as a mandate. *See Milwaukee Police Association v. Milwaukee*, 92 Wis.2d 175, 181, 285 N.W.2d 133, 136 (1979) ("The word 'must' in a statute is mandatory.")

The commission contends that if we view § 28–5–18 in light of § 28–5–17,[2] it is evi-

---

1. The commission issued the complaint pursuant to G.L.1956 (1968 Reenactment) § 28–5–18. That provision, which has since been reenacted by G.L.1956 (1979 Reenactment) § 28–5–18, provided:

   "If the commission fails to effect the elimination of such unlawful employment practices and to obtain voluntary compliance with this chapter, or, if the circumstances warrant, in advance of any such preliminary investigation or endeavors, the commission shall have the power to issue and cause to be served upon any person or respondent a complaint stating the charges in that respect and containing a notice of hearing before the commission, a member thereof, or a hearing examiner at a place therein fixed to be held not less than ten (10) days after the service of such complaint. Any complaint issued pursuant to this section must be so issued within one (1) year after the alleged unfair employment practices were committed."

2. General Laws 1956 (1979 Reenactment) § 28–5–17 provides in part:

dent that the Legislature did not use the word "must" in its ordinary, imperative sense. Section 28–5–17 requires the commission to "endeavor to eliminate such unlawful employment practices by informal methods of conference, conciliation, and persuasion * * *." According to the commission, the first sentence of § 28–5–18 prohibits issuance of complaints until those informal efforts to conciliate disputes have failed. In light of that requirement, the commission argues that the Legislature could not have reasonably intended the one-year period provided in § 28–5–18 as an absolute bar to issuance of complaints after that time has passed. In the commission's view, that interpretation of § 28–5–18 would achieve harsh, unintended results because in many cases conciliation efforts will not have failed within the period prescribed for issuing complaints. The commission thus concludes that the Legislature did not use the word "must" in its usual, mandatory sense.

■ We are not persuaded by this argument. Viewed as a whole, § 28–5–18 prescribes an orderly procedure for the issuance of complaints by the commission. The first clause of § 28–5–18, "[i]f the commission fails to effect elimination of such unlawful employment practices and to obtain voluntary compliance with this chapter * * * [it] shall have the power to issue * * * a complaint * * *," incorporates into the complaint process the legislative preference expressed in § 28–5–17 for consensual elimination of unfair employment practices. In most cases, therefore, the commission will investigate alleged violations of, and seek voluntary compliance with, the Act before it institutes formal proceedings under § 28–5–18. The

second and third clauses of § 28–5–18 empower the commission to vary that preferred sequence of events in individual cases. Those clauses provide that "if the circumstances warrant, in advance of any such preliminary investigation or endeavors [to obtain voluntary compliance], the commission shall have the power to issue * * a complaint * * *." Section 28–5–18 does not indicate how extensive informal efforts to conciliate charges must be before those efforts are deemed failed. Nor does it indicate what circumstances warrant departure from the preferred sequence of investigation, conciliation, and complaint. Thus, contrary to its assertions, the commission may exercise discretion on a case-by-case basis to determine at what point a complaint should issue.

The commission contends that the one-year period provided in § 28–5–18 is also merely directory because it prescribes the action of a public official. In support of that contention, the commission points to *Tiverton v. Fraternal Order of Police, Lodge # 23*, 118 R.I. at 164–65, 372 A.2d at 1275, where we stated,

"[w]e recognize the general distinction between statutes aimed at public officers and those directed towards private individuals. In the former instance it is deemed preferable not to prejudice private rights or the public interest where the fault for delay rests with a public officer."

According to the commission, the complaint procedure set out in § 28–5–18 entrusts the commission with the power and responsibility to enforce private rights. Thus, if the commission fails to file a timely complaint in response to timely charges filed by an individual, the fault for delay rests with the

"Upon the commission's own initiative or whenever an aggrieved individual or an organization chartered for the purpose of combating discrimination, racism, or of safeguarding civil liberties, or of promoting full, free, or equal employment opportunities, such individual or organization being hereinafter referred to as the complainant, makes a charge to the commission that any employer, employment agency, labor organization, or person, hereinafter referred to as the respon-

dent, has engaged or is engaging in unlawful employment practices, the commission may initiate a preliminary investigation and if it shall determine after such investigation that it is probable that unlawful employment practices have been or are being engaged in, it shall endeavor to eliminate such unlawful employment practices by informal methods of conference, conciliation, and persuasion, including a conciliation agreement * * *."

commission. If the one-year period provided in § 28–5–18 is deemed mandatory, the commission argues that individuals' rights will be prejudiced because of delay caused by the commission. The commission therefore urges us in light of the principle announced in *Tiverton v. Fraternal Order of Police, Lodge # 23, supra,* to interpret the time period provided in § 28–5–18 as directory to avoid prejudice to private rights.

We agree with the commission that § 28–5–18 is a statute "aimed at public officers" which affects private rights and thus falls within the class of statutes discussed in *Tiverton v. Fraternal Order of Police, Lodge # 23, supra.* We observe, however, that the principle discussed in that case is merely an aid to interpretation of such legislation. We use interpretive aids only when confronted by statutes that are facially ambiguous. *State v. LaPlume,* 118 R.I. 670, 683, 375 A.2d 938, 944 (1977); *Kastal v. Hickory House, Inc.,* 95 R.I. 366, 369, 187 A.2d 262, 264 (1963). We cannot invoke such aids to defeat clearly expressed legislative intent. *See Orthopedic Specialists, Inc. v. Great Atlantic & Pacific Tea Co.,* R.I., 388 A.2d 352, 354 (1978).

We believe that the Legislature, consistent with the language of § 28–5–18, intended that the one-year issuance period operate as a check on the commission's broad discretion to select the time to issue complaints. A mandatory time limit promotes prompt investigations and attempts to conciliate alleged violations of the Act. If efforts to conciliate have not succeeded within the time provided, the commission must decide whether to initiate formal proceedings. The time limit imposed by § 28–5–18 also ensures that persons charged with violating the Act will receive notice of those charges within one year of the alleged violation. Prompt notification will enable such persons to investigate alleged violations and to preserve evidence necessary to conciliate or to rebut the commission's charges.

We therefore deny and dismiss the commission's petition, quash the writ of certiorari, and order the records certified to this court returned to the Superior Court endorsed with our decision.