John HAWKINS et al

v.

**TOWN OF FOSTER.**

**TOWN OF FOSTER**

v.

**John HAWKINS et al.**

**Nos. 93–524–Appeal, 95–584–Appeal.**

Supreme Court of Rhode Island.

March 6, 1998.

James E. Kelleher, John C. Revens, Warwick, for Plaintiffs.

Nicholas Gorham, North Scituate, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

**OPINION**

LEDERBERG, Justice.

These consolidated cases arose out of John and Bertha Hawkins's (Hawkinses) operation of a camping facility in the Town of Foster, Rhode Island (Foster or town). At issue are the validity of the town's campground ordinance and the applicability of the town's zoning ordinances and its ordinances that license trailers and trailer parks. Basically, this litigation centers on whether the Hawkinses should be allowed to accommodate trailers on a year-round basis at their campground. For the following reasons, we sustain Foster's appeal in *Hawkins v. Town of Foster,* (No. 91–8339), and deny and dismiss the Hawkinses' appeal in *Town of Foster v. Hawkins,* (No. 93–5038). A brief summary of the facts and procedural history follows with additional details provided as needed in the discussion of the issues raised by these appeals.

**Facts and Procedural History**

The Hawkinses have been the owners and operators of the Whippoorwill Hill Family Campground (Whippoorwill) in Foster since 1968. Whippoorwill has approximately 150 campsites and is equipped to accommodate campers who bring in either tents or trailers. Approximately 140 of the sites at Whippoorwill are designed for trailers. In 1965 the town enacted "An Ordinance Regulating Privately Owned Camping Areas in the Town of Foster" (hereafter referred to as campground ordinance), requiring a license to be obtained in order to operate a private camping area within the town and mandating the closure of such campgrounds during the month of January. Prior to commencing their operations, the Hawkinses applied for and were granted a license under the campground ordinance. Because the town issued its campground licenses only on a yearly basis, the Hawkinses applied for and renewed their license each year from 1969 through 1992.

In 1991, the Hawkinses kept Whippoorwill open during the month of January, claiming that several campers had asked to use the campground during the winter months. The Hawkinses also explained that they expected

that the presence of year-round campers would decrease the vandalism that had plagued Whippoorwill during its period of closure. Moreover, they hoped that the added revenue would help offset the burden of an increase in Foster's tax rate. In response to the campground's operation during the mandated closure period, the Hawkinses were fined $100. They paid the fine under protest. According to testimony offered at trial, Whippoorwill has approximately thirty sites that are equipped to provide camper trailers with water during the winter months when approximately five or six trailers remained.

In August of 1991, the town amended its campground ordinance to provide mandatory closure in both January *and* February and to increase the fine for violating the ordinance. The Hawkinses brought suit in the Superior Court on December 12, 1991, seeking to have the campground ordinance declared void as *ultra vires.* They also sought an injunction prohibiting the town from taking any action to prevent the operation of Whippoorwill as long as the campground was in compliance with the applicable rules and regulations of the State Department of Health. A justice of the Superior Court entered a temporary restraining order on January 2, 1992, barring the town from enforcing its campground ordinance.

The case was tried before another justice of the Superior Court in April 1993. Shortly before the commencement of trial on the Hawkinses' complaint, the town moved to amend its answer to include affirmative defenses, specifically, that the Hawkinses' operation of Whippoorwill violated the town's zoning ordinance as well as the ordinances regulating the licensing of trailers and trailer parks (hereafter referred to as trailer and trailer park ordinances). That motion was granted over the Hawkinses' objection. The trial justice, however, did not allow the town to present evidence on these affirmative defenses despite Foster's numerous offers of proof. The trial ended favorably for the Hawkinses with a judgment declaring the campground ordinance to be *ultra vires* and therefore void. The town appealed that order to this Court.

On September 10, 1993, after the entry of a final judgment in the first trial, the town filed a separate civil action against the Hawkinses, alleging that the presence of the trailers at Whippoorwill violated the town's zoning ordinance as well as its trailer and trailer park ordinances. The town also claimed that the Hawkinses' use of Whippoorwill as a year-round camping area constituted a public nuisance under G.L.1956 § 10–1–1. The Hawkinses moved to have this second case dismissed on the ground that the claims presented therein were compulsory counterclaims in the first case and, not having been raised as such by the town in the initial litigation, were irretrievably waived. On October 28, 1993, this Court granted the town's motion to remand the first case to the Superior Court so that the town could amend its answer to assert counterclaims pertaining to the town's zoning, trailer and trailer park ordinances. On February 15, 1994, a third justice of the Superior Court heard and denied the Hawkinses' motion to dismiss the second case. The parties apparently understood the justice to have ruled that, for the purposes of the initial litigation, the town's claims were permissive rather than compulsory counterclaims.

The Hawkinses then sought certiorari from this Court, asking us to halt the proceedings in the Superior Court and enjoin the town from enforcing its zoning, trailer, and trailer park ordinances on the grounds of *res adjudicata* and collateral estoppel. On July 29, 1994, this Court denied their petition and granted the town's motion that the Superior Court be allowed to retain jurisdiction of the first lawsuit until the town's counterclaims were "fully adjudicated."

The second trial was presided over by a fourth justice of the Superior Court. After several days of testimony and a view of the site at Whippoorwill, the trial justice ruled that the occupation of trailers as dwelling units at Whippoorwill did not violate the town's zoning ordinance, nor did it constitute a public nuisance. The justice did find, however, that the trailers at Whippoorwill violated Foster's trailer and trailer park ordinances.

The town appealed to this Court both the ruling that the campground ordinance was *ultra vires* and the finding in the second case that the year-round occupation of trailers at Whippoorwill did not violate the town's zoning ordinance. In addition, the town argued that the trial justice erred when he determined that the year-round presence of occupied trailers at Whippoorwill did not amount to a public nuisance. The Hawkinses, in turn, appealed both the finding that the trailers at Whippoorwill violated the town's trailer and trailer park ordinances, and the denial of their motion to dismiss the second case, insisting that the town's claims should have been presented as compulsory counterclaims in the first case. The Hawkinses additionally argued that the doctrine of equitable estoppel should prevent the town from effectively shutting down Whippoorwill by enforcing its trailer and trailer park ordinances.

## Enabling Legislation

It is well-established that cities and towns have limited power "to enact ordinances, except [by virtue of] those powers from time to time delegated to them by the Legislature." *Bertrand v. Di Carlo*, 111 R.I. 509, 511, 304 A.2d 658, 659 (1973). The town's authority to regulate the operation of Whippoorwill derives from such a delegation, as found in two public enabling laws enacted by the Legislature in the 1960s. The first reads in pertinent part:

"**Section 1.** The town council of the town of Foster is hereby empowered to control the use and location of house trailers and mobile homes, when stationary, within said town, which are being used for dwellings, permanent or temporary, and said town council is also hereby empowered to license and restrict the location and use of trailer parks in said town." P.L.1960, ch. 37.

Evidently, that delegation was found to be insufficient because a subsequent 1965 law provided:

"**Section 1.** For the purpose of promoting the public health, safety, morals and general welfare of the town of Foster, the town council of Foster shall have the power in accordance with the provisions of this act, by ordinance to regulate, control, permit and license trailers within the town and to amend such ordinances from time to time.

"**Sec. 2** Such ordinances may * * * limit and define the areas of the town wherein trailers may be located, and may also provide for and regulate the minimum size of the lots whereon trailers may be located, the type of electrical service, water supply, sewage disposal facilities and other matters relating to public health and safety.

"**Sec. 3** Such ordinances may provide for the issuance of permits for the installation of trailers and for the issuance of licenses to use the same. Such licenses shall expire on December 31st of each year.

* * *

"**Sec. 7** For the purposes of this act the following definitions shall apply:

'*Trailer*' means *any portable structure*, mobile home, so-called, or vehicle designed to be drawn by vehicles or self-propelled and occupied as a dwelling or *used for sleeping purposes*." P.L.1965, ch. 22. (Emphases added.)

On the basis of these two enabling acts, the town enacted several ordinances in the 1960s that purported to regulate campgrounds, trailers, and trailer parks. The validity and application of these ordinances constitute the crux of the current litigation. Our standard of review on issues of statutory construction is clear. We "glean the intent and purpose of the Legislature 'from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement' of the provisions to be construed." *In re Advisory to the Governor*, 668 A.2d 1246, 1248 (R.I.1996) (quoting *Algiere v. Fox*, 122 R.I. 55, 58, 404 A.2d 72, 74 (1979)).

## Campground Ordinance

In addition to establishing a mandatory closure period for privately owned camping areas, the town's campground ordinance states that "[n]o person shall maintain or operate a camping area within the Town of Foster without a license for the same." The

ordinance defines "camping area" as "any tract or parcel of land set aside for use by persons paying a fee to camp there in tents, similar portable structures, vehicles designed for use in camping *or camping trailers,* so-called." (Emphasis added.)

The Hawkinses argued that the enabling legislation authorized Foster to regulate only trailers used as permanent residences, not so-called camping trailers. This Court, however, rejected an analogous distinction in a case that is remarkably similar to the one before us. In *Braman v. Wawaloam Reservation, Inc.,* 107 R.I. 270, 276, 267 A.2d 410, 413 (1970), we pointed out, "It is obvious that a travel trailer camping area is in its nature a trailer park, even though a travel trailer may differ in characteristics from a house trailer." Moreover, the definition of a trailer in the 1965 legislation can be liberally interpreted to include a tent. Hence, we eschew imposing a limitation on that definition by judicial fiat.

■ Foster's campground ordinance, in purporting to regulate "tents, similar portable structures, vehicles designed for use in camping or camping trailers, so-called," closely tracks the Legislature's language in section 7 of P.L.1965, ch. 22. It is our considered opinion that the power exercised by the town in enacting the campground ordinance falls within the authority delegated to the town under a fair reading of the enabling legislation. This broadly delegated power to regulate trailers and trailer parks would be curtailed by a declaration that the campground ordinance is *ultra vires. See Braman,* 107 R.I. at 276, 267 A.2d at 413 (construing enabling legislation authorizing regulation of trailer parks as "conferring a plenary authority on the town council to regulate [all] construction within the travel trailer camping area"). Our review of the enabling legislation persuades us that the trial justice erred in finding that the town overreached its delegated authority when it attempted to regulate private camping areas. Foster's enactment of its campground ordinance constituted a valid exercise of the town's authority. Accordingly, we reverse the Superior Court order that declared the campground ordinance *ultra vires* and void.

## Trailer and Trailer Park Ordinances

At the conclusion of the second trial, the trial justice ordered that trailers at Whippoorwill must comply with the town's trailer and trailer park ordinances. On appeal, the Hawkinses contended that these ordinances by their own terms apply only to house trailers and motor homes, not to camping trailers. The authority of the town to enact its trailer and trailer park ordinances under the power delegated to it by the Legislature has not been challenged.

In his order, the trial justice made the following findings:

"This Court finds that the structures occupied by persons on the Hawkinses' premises are trailers. They are a form of 'house trailer' called 'camping trailers.' * * * The Court further finds that, since two or more 'trailers,' as defined, are used as sleeping or living quarters on the Hawkinses' land, the Hawkinses do maintain and operate a trailer park, as defined in the [trailer park] ordinance. The Court finds that the trailers on the Hawkinses' premises are dwelling units, as defined by the zoning ordinance, and as mentioned in the [trailer] ordinance."

■ The findings of a trial justice sitting without a jury are entitled to great weight, and the " 'resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference.' " *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 317 (R.I.1996) (quoting *Warwick Musical Theatre, Inc. v. State,* 525 A.2d 905, 909–10 (R.I.1987)). Under our well-settled standard of review, these findings on appeal will not be disturbed absent a trial justice's clear error, oversight, or misconception of material evidence. *Dupuis,* 679 A.2d at 317 (citing *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440, 443 (R.I.1994)).

■ Because the Legislature granted the town the power to regulate and license trailers and trailer parks, and because neither the 1965 enabling legislation nor the ordinances enacted under the delegated authori-

ty distinguish "camper trailers" from "house trailers," it is our conclusion that the trial justice was not clearly wrong in finding that "camper trailers" are subsumed under the broader heading of "house trailers." We concur with the trial justice's determination that "[because] neither the [trailer park] ordinance nor the [trailer] ordinance has reference to the period of time during which the trailers are 'used as sleeping or living quarters' on the [Hawkinses'] land, or are used as 'dwelling units' * * * both ordinances apply to the Hawkinses if the trailers are occupied for any period, whether or not year-round." We discern no error in the trial justice's analysis, and accordingly, we reject the Hawkinses' argument to the contrary and deny their appeal of this finding.

### Status of the Campground

Although we identify no error in the trial justice's analysis of the applicability of the trailer and trailer park ordinances to the operation at Whippoorwill, our validation of the campground ordinance compels further discussion. Under the law of the case doctrine, the trial justice of necessity relied on the prior determination that the campground ordinance was invalid and *ultra vires.* Our reinstatement of that ordinance, however, effectively trumps the trial justice's further rulings. Those rulings, although not incorrect *per se,* have been mooted; they simply do not apply.

It is clear that the campground ordinance is a specialized component of the town's regulatory scheme; the campground ordinance essentially carves out an exception to the more rigid constraints of the trailer and trailer park ordinances. The trailer ordinance itself emphasizes this point in the Section 13 Amendment to Ordinance Regulating Trailers in the Town of Foster:

> "The provisions of this [trailer] ordinance shall not apply to so-called camping trailers or vehicles designed for use in camping while located in a camping area duly licensed under the Town of Foster ordinance regulating camping areas."

It is also clear that application of the campground ordinance is necessarily exclusive of the application of the trailer park ordinance, and vice versa. Therefore, as long as the Hawkinses comply with the campground ordinance in all respects, they can continue to operate within the regulatory scheme that the town has instituted for campgrounds, separate and apart from additional provisions of the trailer and trailer park ordinances. Should the Hawkinses decide to operate in violation of the campground ordinance, however, then any trailers located at Whippoorwill would be required to comply with the applicable provisions of the town's other ordinances.

Our reinstatement of the campground ordinance renders moot the other issues brought on appeal by the parties, and accordingly we do not address them.[1]

In summary, therefore, we sustain the town's appeal and reverse the judgment of the Superior Court in *Hawkins v. Town of Foster,* (No. 91–8339). We deny and dismiss the appeal of John and Bertha Hawkins and affirm the judgment of the Superior Court in *Town of Foster v. Hawkins,* (No. 93–5038). The papers in these cases may be remanded to the Superior Court for the entry of an

---

1. We do note in dicta, however, that we cannot agree with the Hawkinses' claim that the trial justice erred in denying their motion to dismiss the action that Foster brought against them. The Hawkinses averred that this second litigation was foreclosed by the town's failure to assert the claims therein as counterclaims in the first case. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," Super. R. Civ. P. 13(a), and must be pleaded or the claim will be considered lost. The town presented the Hawkinses' alleged violation of the trailer, trailer park and zoning ordinances as affirmative defenses in the first case. Although the town labeled these allegations "affirmative defenses" rather than "counterclaims," our review of the transcript from the hearing revealed that Foster struggled valiantly to have all of these issues fully considered at the first trial. Rule 8(c) of the Superior Court Rules of Civil Procedure specifies that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Even if the town's claims were compulsory counterclaims, the trial justice should have treated the town's affirmative defenses as counterclaims and allowed the town to prove its case.

appropriate order consistent with this opinion.

BOURCIER, J., did not participate.