DECISION
Before the Court is an appeal by the Rhode Island Department of Environmental Management (DEM) from a decision of the Rhode Island State Labor Relations Board (Board), finding that DEM violated G.L. 1956 § 28-7-13 (6) and (10) by failing to negotiate with the Rhode Island Council 94, AFSCME, Local 2881 (Union), on the terms and conditions of employment for a part-time position created by DEM. Jurisdiction is pursuant to G.L. 1956 § 42-35-15 and § 28-7-29.
 Facts/Travel
On July 8, 1994, DEM posted a notice of vacancy for the recently created part-time union position of Principal Forester. Two days before the posting, on July 6, 1994, the Union filed a grievance with DEM, arguing that there are no part-time Principal Forester positions in the Collective Bargaining Agreement (CBA) between DEM and the Union, and requesting that DEM post the position as full-time.
On July 26, 1994, DEM rejected the grievance, asserting that posting the position as part-time did not violate the terms of the CBA. Pursuant to the terms of the CBA, the Union filed the same grievance with a hearing officer of the Department of Administration, Division of Human Resources, Office of Labor Relations (hearing officer). On October 17, 1994, the hearing officer rejected the grievance, finding that DEM did not violate the CBA by posting the position as part-time.
On November 7, 1994, the Union filed a charge with the Board alleging that DEM had committed unfair labor practices in violation of the Rhode Island Labor Relations Act.[1] Specifically, the charge alleged that DEM violated G.L. 1956 § 28-7-13 (6) and (10) and "any other provision that may apply" by failing to negotiate with the Union on the terms and conditions of employment for the position of Principal Forester.[2]
Pursuant to the requirements of G.L. 1956 § 28-7-9 (b)(5), an agent of the Board held an informal conference between the Union and DEM on December 19, 1994, in an attempt to resolve the charge. The parties were unable to do so, and on February 20, 1997, the Board issued a complaint against DEM. In the complaint, the Board stated that DEM violated G.L. 1956 § 28-7-13 (6) and (10) by posting the Principal Forester position as part-time without first negotiating with the Union. On September 1, 1998, after several reschedulings,[3] the Board held a formal hearing on the complaint.
After considering the arguments and evidence presented at the hearing, as well as written briefs submitted after the hearing by both parties, the Board filed a decision on June 10, 1999. In its decision, the Board held that it had jurisdiction over the matter, and that DEM violated G.L. 1956 § 28-7-13 (6) and (10) by "refusing and failing to negotiate the terms and conditions of employment for the part-time position of Principal Forester prior to its creation." Decision at 13. The DEM timely filed an appeal on June 23, 1999, pursuant to G.L. 1956 § 42-35-15 (b) and § 28-7-29.
On appeal, DEM argues that the Board erred on both procedural and substantive grounds. Specifically, DEM argues that the Board issued its complaint in an untimely fashion, and therefore it must be dismissed. The DEM also argues that the complaint should be dismissed because it fails to inform DEM of the factual basis for its allegations. The DEM further argues that it was not under a duty to bargain because the Union waived its right to negotiate the creation of the Principal Forester position; that the creation of the position is a matter of contract interpretation, thus beyond the jurisdiction of the Board; that the creation of the position was beyond the scope of the CBA; and that the Board erred when it refused to admit testimony concerning positions at other agencies covered under the same CBA. The DEM finally argues that it did not commit an unfair labor practice in creating the part-time position of Principal Forester because it made attempts to negotiate with the Union and because the CBA gives DEM the right to create such a position.
 Standard of Review
The review of a decision of the Board by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of an agency, a justice of the Superior Court may not substitute his or her judgment for that of the agency board on issues of fact or as to the credibility of testifying witnesses, Mercantum Farm Corp. v. Dutra, 572 A.2d 286, 288 (R.I. 1990) (citing Leviton Mfg. Co. v. Lillibridge, 120 R.I. 283, 291,387 A.2d 1034, 1038 (1978)); Center for Behavioral Health, RhodeIsland, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998), where substantial evidence exists on the record to support the board's findings. Baker v. Department of Employment and Training Board ofReview, 637 A.2d 360, 366 (R.I. 1994) (citing DePetrillo v.Department of Employment Security, 623 A.2d 31, 34 (R.I. 1993);Whitelaw v. Board of Review, Department of Employment Security,95 R.I. 154, 156, 185 A.2d 104, 105 (1962)). Findings of fact by an agency board "are, in the absence of fraud, conclusive upon this court if in the record there is any competent legal evidence from which those findings could properly be made." Mercantum Farm, 572 A.2d at 288 (citing Leviton, 120 R.I. at 287, 387 A.2d at 1036-37). Legally competent evidence is "marked "by the presence of "some' or "any' evidence supporting the agency's findings."' State v. RhodeIsland State Labor Relations Board, 694 A.2d 24, 28 (R.I. 1997) (citing Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)).
 Timeliness of the Complaint
The DEM contends the Board failed to comply with the time requirements set out in G.L. 1956 § 28-7-9 (b)(5). According to DEM, that statute sets strict time limits for the Board to issue a complaint, and if the complaint is not issued in compliance with the statutory deadline, the complaint must be dismissed. The DEM citesRoadway Express v. R.I. Commission for Human Rights, 416 A.2d 673
(R.I. 1980) as precedent for its argument. In Roadway Express, our Supreme Court held that the language of G.L. 1956 § 28-5-18, which states that any complaint issued by the Human Rights Commission "must" be issued within one year, is mandatory. 416 A.2d at 675.
The Board argues that the Labor Relations Act does not specify a mandatory time limit for the issuance of a complaint, and that the time frame set forth in the Act for holding informal and formal hearings is directory, not mandatory.
When faced with an issue of statutory construction, this Court must "glean the intent and purpose of the Legislature "from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement' of the provisions to be construed."Hawkins v. Town of Foster, 708 A.2d 178, 181 (R.I. 1998) (quoting Inre Advisory to the Governor, 668 A.2d 1246, 1248 (R.I. 1996)). Here, two separate sections of the Labor Relations Act are relevant to DEM's argument. Those sections are § 28-7-9 (b)(5), which sets forth the timelines for hearings and decisions, and § 28-7-21, which sets forth the procedural requirements for the issuance of complaints.
 G.L. 1956 § 28-7-9 (b)(5) provides, in pertinent part:
 "All charges of unfair labor practices. . . shall be informally heard by the board within thirty (30) days upon receipt of the charges. Within sixty (60) days of the charges . . . the board shall hold a formal hearing. A final decision shall be rendered by the board within sixty (60) days after hearing on the charges.., is completed and a transcript of the hearing is received by the board."
 Section 28-7-2 1 provides, in pertinent part:
 "Whenever a charge has been made that any employer .. . has engaged in or is engaging in any unfair labor practice, the board shall have power to issue and cause to be served upon the party a complaint stating the charges in that respect and containing a notice of hearing before the board at a place therein fixed to be held not less than seven (7) days after the serving of the complaint[.]"
Section 28-7-21 clearly sets no time frame for , .a complaint to be issued. For this reason, DEM's reliance on Roadway Express and on a subsequent case, Clarke v. Morsilli, 714 A.2d 597 (R.I. 1998) are misplaced, regarding the issue of timeliness of the complaint.Roadway Express and Clarke both involved statutes that set timelines for complaints by state agencies. (Commission for Human Rights and Ethics Commission, respectively.) In both cases, our Supreme Court held that language in the statutes concerning when the particular agency must file a complaint was mandatory, not directory. Here, because no such language exists in § 28-7-2 1, the filing of the complaint cannot have been untimely.
However, DEM argues that the Board's decision must be dismissed because the Board did not follow the time limits set forth in §28-7-9 (b)(5). The DEM reasons that § 28-7-9 (b)(5) is analogous to the statutes analyzed by the Supreme Court in Roadway Express andClarke, which were held to be mandatory; therefore, DEM argues, the language of § 28-7-9 (b)(5) is also mandatory.
Our Supreme Court has not articulated whether or not the language of § 28-7-9 (b)(5) is mandatory or directory. However, in a case involving a labor dispute, the Supreme Court interpreted similar language (although in a contract rather than a statute) to be directory. In Providence Teachers Union v. McGovern, 113 R.I. 169,319 A.2d 358 (1974), the court held that language in a collective bargaining agreement stating that "arbitrators shall call a hearing within ten (10) days after their appointment . . ." was directory, because it was a provision that was "designed to secure order, system and dispatch" and such provisions "are generally held to be directory unless accompanied by negative words." Id. at 364.
After a review of the relevant sections of the Labor Relations Act, particularly § 28-7-9 (b)(5), and relevant case law, this Court finds that the time frame provisions of § 28-7-9 (b)(5) are directory, not mandatory. The provisions of § 28-7-9 (b)(5) are designed to secure order, system and dispatch. They are analogous to the provisions in question in Providence Teachers. Unlike the provisions in question in Roadway Express and Clarke, the instant provisions concern the holding of hearings, not the issuance of a complaint. In the case of an untimely complaint, the party prejudiced by the untimeliness of the filing is prejudiced because of a lack of notice concerning the complaint. Here, DEM was on notice that a hearing would occur, thus was not prejudiced by the untimeliness of the hearing. Furthermore, the provisions of § 28-7-9 (b)(5) are not accompanied by negative words, which are generally required for provisions providing for order and dispatch to be mandatory. Thus, DEM's substantial rights have not been prejudiced by the noncompliance with the time frame provisions of § 28-7-9 (b)(5).
 Adequacy of the Complaint
The DEM further argues that the complaint issued by the Board was deficient because the Board failed to specify what policies of the Labor Relations Act DEM violated. The complaint issued by the Board alleged that DEM violated G.L. 1956 § 28-7-13 paragraphs 6 and 10 by posting the position as part-time without first negotiating with the Union. Section 28-7-13, as it pertains to paragraphs (6) and (10), reads:
 "It shall be an unfair labor practice for an employer:
 (6) To refuse to bargain collectively with the representatives of employees, subject to the provisions of §§ 28-7-14--28-7-19, except that the refusal to bargain collectively with any representative shall not, unless a certification with respect to the representative is in effect under §§ 28-7-14--28-7-19, be an unfair labor practice in any case where any other representative, other than a company union, has made a claim that it represents a majority of the employees in a conflicting bargaining unit.
 (10) To do any acts, other than those already enumerated in this section, which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by § 28-7-12."
It is clear that the complaint was adequate on its face. The Board, in its complaint, alleged that DEM violated the above-listed provisions by not negotiating with the Union. Although DEM obviously disagrees with the substance of the allegation, the complaint fairly put DEM on notice of its alleged violations. See e.g. Conley v.Gibson, 355 U.S. 41 (1957) (Court held that a complaint was sufficient when it contained a "short and plain statement of the claim.").
 Waiver
The DEM further argues that under federal labor law, the Union waived the right to negotiate the matter by not requesting negotiations before filing the charge with the Board. Thus, DEM argues, even if the Board were correct in determining that this matter requires negotiations, it is too late for such negotiations to take place, as the Union has waived its right to do what the Board has ordered — negotiate.
Under federal labor law, when a union fails to act after it has received proper, timely notice of an employer's contemplated unilateral change in a mandatory subject of bargaining, it may waive its right to bargain over the change. See e.g. Gratiot Community Hospital v.NLRB, 51 F.3d 1255, 1259 (6th Cir. 1995); see also NLRB v.Great Western Coca-Cola Bottling Co., 740 F.2d 398 (5th Cir. 1984). Furthermore, "[i]t is well established that it is incumbent upon a union which has notice of an employer's proposed change in terms and conditions of employment to timely request bargaining in order to preserve its right to bargain on that subject. The union cannot be content with merely protesting the action or filing an unfair labor practice charge over the matter." Associated MilkProducers, 300 NLRB 561, 563, 135 LRRM 1290 (1990) (quotingCitizens National Bank of Willmar, 245 NLRB 389, 389-90, 102 LRRM 1467 (1978)).
However, the record does not reflect that DEM raised the issue of waiver before the Board. G.L. 1956 § 28-7-27
states in pertinent part that "[n]o objection that has not been urged before the board, its member, agent, or agency shall be considered by the court[.]" Therefore, this Court cannot consider DEM's waiver argument.
 Subject Matter Jurisdiction of the Board
The DEM argues that based on NLRB policy and Rhode Island caselaw, the Board did not have subject matter jurisdiction over this matter because it is one of contract interpretation. The DEM cites the NLRB's deferral policy[4], which, in essence, states that if a dispute coming under a collective bargaining agreement that provides for arbitration can best be resolved by an arbitrator, the NLRB will defer to the arbitrator to determine the matter. See Collyer Insulated Wire, 192 NLRB 837, 77 LRRM 1931 (1971).
Our Supreme Court has held that it is appropriate to look to federal labor law for guidance in resolving labor questions. See Board of Trustees, Robert H. ChamplinMemorial Library v. Rhode Island State Labor RelationsBoard, 694 A.2d 1185, 1189 (R.I. 1997). Here, however, DEM asks the Court to impose the NLRB deferral policy on the Board.
This Court cannot impose the NLRB's deferral policy because it is "exactly that — a policy." NLRB v. PrintingPressmen, Local 252 (Columbus), 543 F.2d 1161, 1167 (5th Cir. 1976). The NLRB still maintains jurisdiction over matters that it defers. See Printing Pressmen,543 F.2d 1161. While it may be sensible for the Board to adopt a similar policy, that decision does not lie with this Court. While it is proper for this Court to look to federal labor law for guidance, it cannot impose a federal agency's policy on a state agency.
The DEM also cites Lime Rock Fire District v. RhodeIsland State Labor Relations Board, 673 A.2d 51 (R.I. 1996). In that decision, our Supreme Court held that the Board was without jurisdiction to consider an unfair labor charge filed by a fire fighters' union because "the specific mechanism for resolving disputes under the Fire Fighters' Arbitration Act (FAA) is through arbitration."Id. at 54.
A similar statute to the one at issue in Lime Rock
covers state employees. G.L. 1956 § 36-11-7.1 sets forth procedural guidelines for bringing unresolved bargaining issues between unions and state departments or agencies to mediation and arbitration. The statute mandates, interalia, that unresolved issues in collective bargaining shall be mediated after 30 days of the parties' first meeting concerning bargaining.
However, 36-11-7.1 does not apply here. Section36-11-7.1 addresses collective bargaining negotiations. Mediation is mandated when the parties to a collective bargaining agreement come to a standstill on an issue while negotiating or renegotiating their contract. In Lime Rock, the parties were involved in contract negotiations, thus leading the Supreme Court to hold that the FAA mandated mediation and the Board did not have jurisdiction to hear an unfair labor practice charge. Here, the Union and DEM were not involved in the process of renegotiating their CBA when DEM posted the part-time position. For this reason, the Board maintains jurisdiction over this matter.
 Board's Substantive Finding of Unfair Labor Practice
The DEM argues that in addition to making procedural errors, the Board erred in finding that DEM committed an unfair labor practice. The DEM alleges that it attempted to discuss the creation of part-time positions with the Union, which the Union vigorously opposed, in attempting to prove that an impasse on the subject of part-time positions was reached. The DEM argues that because management is allowed to implement proposals after an impasse has been reached, which it argues had been reached here, no unfair labor practice occurred. Furthermore, DEM argues that there is no duty to discuss each individual management decision with the Union if the general subject has been discussed.
Whether bargaining over a subject of collective bargaining has reached an impasse is a question of fact.See Walnut Creek Honda Assocs. 2 v. NLRB, 89 F.3d 645 (9th Cir. 1996). In Dallas General Drivers Local 745, IBT v.NLRB, 355 F.2d 842 (D.C. Cir. 1966), the District of Columbia Circuit Court of Appeals held:
 "The problem of deciding when further bargaining on an issue is futile is often difficult for the bargainers and is necessarily so for the [NLRB]. But in the whole complex of industrial relations few issues are less suited to appellate judicial appraisal than evaluation of bargaining processes or better suited to the expert experience of a board which deals constantly with such problems."
This Court cannot substitute its judgment for the judgment of the Board on the issue of whether an impasse in negotiations over the part-time position was, or was not, reached. The Board found that DEM did not negotiate the wages, hours of employment, time off and work schedule or other benefits for the position before it was posted. This finding of fact was supported by the reliable, probative, and substantial evidence of record. Since DEM's argument that it was not under a duty to negotiate is premised upon the theory that an impasse was reached, the argument fails.
The DEM also argues that the Board was erroneous in its Decision because the CBA gives DEM the right to create part-time positions without negotiating with the Union. The DEM argues that Article 4 (Management Rights); Article 5.3 (Benefits for employees working at least 16 hours per week); Article 31 (Severability); and Article 47.1 (the "zipper clause") all give it the right to create the part time position.
Article 4 of the CBA gives DEM the exclusive right to hire employees. That is not the equivalent of allowing DEM the right to create a part-time position without negotiating with the Union. Furthermore, Article 5.3, Article 31, and Article 47.1 do not afford to DEM the right to create a part-time position without negotiating with the Union. Although Article 5.3 appears to contemplate employees working less than a full-time work week, the article does not state that DEM may avoid negotiations with the Union in creating such a position. Article 31 addresses the loss of funding due to a provision of the agreement. Whether funding would be lost if DEM could not create a part-time job without negotiations is a question of fact that this Court cannot address. Finally, "zipper clauses, " such as Article 47.1, do not give an employer the right to impose unilateral changes to existing conditions of employment. See e.g. GTE Automatic Elec. Inc., 261 NLRB 1491, 110 LRRM 1193 (1982).
Furthermore, DEM's argument that the Board erred in refusing to hear testimony regarding prior creations of part-time positions is without merit, because the matter before the Board concerned an unfair labor practice, not a CBA grievance. Also, DEM's argument that the creation of the part-time position was beyond the scope of the CBA is without merit. Negotiating with the Union does not impair the ability of the director of DEM to carry out the statutory mandate of assigning functions within DEM and organizing DEM in accordance with "good administrative principles and practices." G.L. 1956 § 42-6-8.
After a review of the entire record this Court finds that the Board's decision is supported by substantial, reliable and probative evidence of record, and is not affected by error of law. Substantial rights of DEM have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit an appropriate order for entry.
[1] G.L. 1956 § 28-7-1 et seq.
[2] G.L. 1956 § 28-7-13 (6) and (10) read:
 "It shall be an unfair labor practice for an employer:
 (6) To refuse to bargain collectively with the representatives of employees, subject to the provisions of §§ 28-7-14-28-7-19, except that the refusal to bargain collectively with any representative shall not, unless a certification with respect to the representative is in effect under §§ 28-7-14-28-7-19, be an unfair labor practice in any case where any other representative, other than a company union, has made a claim that it represents a majority of the employees in a conflicting bargaining unit.
 (10) To do any acts, other than those already enumerated in this section, which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by § 28-7-12."
[3] Prior to the eventual September 1, 1998 hearing, the matter had been scheduled for hearings on several different dates, which were postponed or otherwise continued for a variety of reasons: April 17, 1997, postponed for "medical reasons"; August 26, 1997, a hearing was convened, but the matter was held in abeyance at the request of the parties, who were attempting to reach a settlement. May 5, 1998 and August 25, 1998 were assigned hearing dates, but both dates were unacceptable to the Union.
[4] Known as the Collyer Doctrine.