**STATE ex rel. TOWN OF RICHMOND**

v.

**Leo R. ROODE, III et al.**

**No. 2001–117–C.A.**

Supreme Court of Rhode Island.

Dec. 19, 2002.

Michael L. Cozzolino, Westerly, for Plaintiff.

Vincent J. Naccarato, Providence, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

Was a municipality spinning its wheels when it accused the owner and operator of a certain tracked parcel of land of allowing this property to be used for motorized dirt-biking without first obtaining a license to do so? Yes, we hold, because the enabling legislation in question did not authorize the town to license this particular use of the property.

The Town of Richmond (town) appeals from a Superior Court judgment dismissing five consolidated criminal actions that it filed against defendants, property owner Baron Holdings, LLC (Baron) and its managing member, Leo R. Roode, III. The town accused defendants of violating a town ordinance by maintaining a race track on a parcel of Baron's property in the town (the property) without first obtaining a license from the town to do so. After examining the parties' prebriefing materials, a single justice of this Court ordered the parties to show cause why we should not decide the appeal summarily. After considering the parties' written and oral submissions, we conclude that they have not done so and, thus, we proceed to decide the appeal at this time.

On appeal, the town contends that the trial justice erred in finding that the ordinance in question did not apply to the operation of motorized dirt bikes on the property. According to the town, enabling legislation authorized it to license all race tracks in the town in which the owners permitted combustion-engine vehicles, including dirt bikes, to operate. After considering the scope of this legislation, we respectfully disagree and conclude that the enabling legislation does not include the licensing of dirt-bike tracks within its ambit. Accordingly, we affirm the judgment.

After the District Court found them guilty of violating the ordinance, defendants appealed the town's five separate criminal complaints to the Superior Court. The parties submitted an agreed statement of facts to a trial justice, who noted that it "spells out the areas of agreement by the parties and limits the areas of disagreements to a handful." According to the agreed facts, since 1994, defendants permitted one Kyle Roode and his friends to operate motorized "dirt bikes" on the property. The defendants also allowed the property to be shaped into a "track" for the dirt bikes to use. The town alleged that defendants installed dirt moguls (ridges) on the track—as well as a viewing stand and loudspeakers—and that they also displayed several corporate banners with slogans such as "Welcome Race Fans." But defendants did not collect fees for admission to the track, nor did they record the times of the dirt-bike operators or award them any prizes. Nevertheless, according to the town, the residents abutting the property complained of excessive noise, smoke, and substantial amounts of dirt and dust blowing on their laundry lines and through their open windows in the summer.

Treating the pretrial oral argument of defendants' counsel as a motion to dismiss the charges, the trial justice ruled that the ordinance regulated only go-karts because it specified that only vehicles with no more than three-horsepower engines could operate at a licensed track, see Richmond Town Ordinance § 5.40.110, whereas the motorized dirt bikes on the property operated with engines in excess of three horsepower. Further, the trial justice interpreted

the relevant enabling statute, P.L.1964, ch. 96, § 1, as authorizing the Town of Richmond to regulate only the "manag[ment] of go-carts and drag race tracks," rather than all kinds of race tracks. In light of these determinations, the trial justice dismissed all counts against defendants with prejudice, and the town has appealed from that judgment.

## Double Jeopardy

◼ Initially, defendants assert that double-jeopardy considerations preclude the town's appeal. But we conclude that this argument lacks merit. The trial justice did not employ the parties' agreed statement of facts to resolve this case after the trial was underway; rather, before the trial began, he used the agreed facts to determine whether, as a matter of law, the ordinance was even applicable to defendants. Further supporting this conclusion is the trial justice's acknowledgment from the bench that the agreed statement of facts was not dispositive of all factual issues in the case. Given the pretrial context of his dismissal ruling, jeopardy had not yet attached. Therefore, double-jeopardy principles do not bar the town's appeal. *See State v. Pari*, 546 A.2d 175, 179–80 (R.I.1988) (holding that jeopardy did not attach to a pretrial dismissal determination when the parties had reserved their right to a jury trial if the motion to dismiss was denied). Moreover, defendants specifically reserved their right to a jury trial in filing their appeal in the Superior Court. Rule 23(a) of the Superior Court Rules of Criminal Procedure requires any waiver of the right to a jury trial to take place in open court, in writing, and with approval of the court.[1] Here, defendants failed to agree to any such waiver—nor did the

court approve any waiver—leaving us with every indication that the parties would have proceeded to a jury trial on the merits of the case if the pretrial argument had not resulted in a dismissal.

## The Motion to Dismiss

◼ In assessing a motion to dismiss in a criminal case, the trial justice must examine the charges and attached exhibits to determine whether probable cause exists to find that defendants have committed the charged offenses. *See State v. Aponte*, 649 A.2d 219, 222 (R.I.1994) (per curiam) (quoting *State v. Jenison*, 442 A.2d 866, 875 (R.I.1982)). In this case, the probable-cause determination turned on whether the enabling legislation authorized the town to enact and apply the ordinance in question to the challenged activities on the property. The relevant enabling legislation—P.L.1964, ch. 96—is entitled: "An Act * * * for the Issuing of Licenses to All Persons Operating and Managing Go–Kart and Drag Race Tracks in the Town of Richmond for the Racing of Vehicles Propelled by Internal Combustion Engines and Further to Provide by Ordinance for the Regulation of the Same" (the act). Section 1 of the act repeated the above language in authorizing the town to enact an ordinance to license operators of go-kart and drag-race tracks. The act also authorized the town to require liability insurance for such tracks, to enact safety measures, and to establish age limits for participants in go-kart races. P.L.1964, ch. 96, §§ 2–4. In addition, the act allowed the town to prescribe penalties for violators of the ordinance in the maximum amount of $200 for a fine or up to six months imprisonment. P.L.1964, ch. 96,

---

1. Rule 23(a) of the Superior Court Rules of Criminal Procedure provides:
   "**Trial by jury or by the court.**—(a) *Trial by Jury*. Cases required to be tried by jury shall be so tried unless the defendant in open court waives a jury trial in writing with the approval of the court."

§ 5. The act's authorization for the town to license go-kart and drag-race tracks, however, did not expressly allow the town to license other types of tracks and activities thereon that did not involve motor vehicles used for go-karting and drag racing.

Based on this authorization, the town enacted ordinance § 5.40 entitled "Race Tracks and Kart Tracks." In defining the terms used in the ordinance, however, the town expanded upon the act's authorization for the town to license drag-racing and go-kart tracks and extended it to require a license for "any track or strip * * * built or maintained for the operation of a [motor] vehicle." Richmond Town ordinance § 5.40.010(a). Thus, the ordinance defines "Kart track" as "any track or strip, whether circular, straightaway or otherwise laid out and constructed of dirt, clay, gravel, concrete, asphalt, macadam or any other material or materials, built or maintained for the operation of a vehicle." Id. A "Race track" has the same definition as "Kart track" except it is "built or maintained for racing or speed testing." Id. at § 5.40.010(d). Under the ordinance, no person shall maintain or operate a kart track or race track as defined therein without first obtaining a license. Id. at § 5.40.020. The ordinance also limits licensed tracks to vehicles with no more than three-horsepower engines. Id. at § 5.40.110. The maximum penalties for each violation of the ordinance are a $200 fine or imprisonment for six months. Id. at § 5.40.130.

■ The ordinance at issue in this case provided for criminal penalties. "[P]enal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed." State v. Smith, 766 A.2d 913, 924 (R.I.2001) (quoting State v. Bryant, 670 A.2d 776, 779 (R.I.1996)). Strictly construing the town's ordinance in favor of defendants, we agree with the trial justice's conclusion that the town attempted to expand its application beyond the scope of the pertinent enabling legislation. "It is well-established that cities and towns have limited power 'to enact ordinances, except [by virtue of] those powers from time to time delegated to them by the Legislature.'" Hawkins v. Town of Foster, 708 A.2d 178, 181 (R.I.1998) (quoting Bertrand v. Di Carlo, 111 R.I. 509, 511, 304 A.2d 658, 659 (1973)). It is also well settled "that a legislative grant of municipal power to exercise a portion of the state's sovereignty should be strictly construed * * *." Bertrand, 111 R.I. at 512, 304 A.2d at 660.

■ The town argues that we should construe the act's language as permitting the municipal regulation of all race tracks built for vehicles with internal combustion engines. It contends that our holding in Hawkins supports this proposition. Hawkins, 708 A.2d at 181–82. In Hawkins, we upheld a Foster town ordinance that purported to regulate camp grounds and trailers. The state enabling legislation relevant to the Foster ordinance defined trailer to include "any portable structure * * * occupied as a dwelling or used for sleeping purposes." Id. at 181. We concluded that this enabling authority allowed the town of Foster to regulate tents and recreational "camping trailers" at camp grounds. Id. at 182. But unlike the enabling statute at issue in Hawkins, the act in this case does not contain a similar definitional section that expansively defines go-kart and drag-racing tracks as broadly as they are defined in the town's ordinance. Rather, the act merely provides authorization for the town "to provide by ordinance for the issuing and revocation of licenses to all persons operating and managing go-kart and drag race tracks * * *." P.L.1964, ch. 96, § 1.

When a statute's meaning is clear and unambiguous, we apply the plain and ordinary meaning of the language used in the statute. *Smith*, 766 A.2d at 924 (citing *Bryant*, 670 A.2d at 779). Pursuant to its plain language, the act at issue purports to provide for the town's regulation of "go-kart" and "drag race" tracks. According to the American Heritage Dictionary, at page 544 (4th ed.2000), a "drag race" is a "race between two cars to determine which can accelerate faster from a standstill." According to WordNet (Princeton University 2001, at http://www.cogsci.princeton.edu/~wn (last visited Oct. 23, 2002)), a go-kart is "a small low motor vehicle with four wheels and an open framework; used for racing." These modern definitions are similar to those found in a dictionary published in the 1960s when the General Assembly passed the act. *See* Webster's Third New International Dictionary, 684, 973 (unabr.1961) (defining drag race as "an acceleration contest between automobiles, esp. hot rods" and go-cart as a "walker", "handcart", "light open carriage", or "stroller"). Based on these definitions of the words used in the enabling legislation, the General Assembly did not provide the town with the authority to enact ordinances with criminal penalties for unlicensed activities on tracks constructed for and used by two-wheeled, motorized dirt bikes. *Cf. Bertrand*, 111 R.I. at 512–14, 304 A.2d at 660–61 (invalidating a town ordinance purporting to regulate the storage of kerosene and petroleum in private dwellings because it was beyond the scope of the relevant enabling legislation).

For these reasons, we conclude, the trial justice was correct in strictly construing this ordinance and in dismissing the charges. Thus, the defendants' other arguments need not be addressed. We hold that, under the act, the town was not authorized to impose criminal penalties on tracks that host motorcyclists or dirt-bike riders without obtaining a license to do so. In so holding, we do so without prejudice to the town or to other aggrieved parties either seeking legislative authorization for the town to license such activities or seeking judicial relief against the challenged activities on some other basis, including, for example that they allegedly constitute a nuisance or violate the zoning ordinance. No such allegations, however, are at issue in this case. For these reasons, we affirm the Superior Court judgment and deny the town's appeal.