Filed 2/5/24  In re David V. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re DAVID V. et al., Persons Coming Under the Juvenile Court Law. | B328454 |
| | (Los Angeles County Super. Ct. No. 18CCJP05847) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>DAVID V.,<br><br>          Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Conditionally affirmed with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

———————————————————

## INTRODUCTION

David V. appeals from an order under Welfare and Institutions Code section 366.26 terminating his parental rights to his sons, David V. (D.V.) and Aiden V.[1]  David argues the juvenile court erred in ruling the parental-benefit exception under section 366.26, subdivision (c)(1)(B)(i), did not apply.  We conclude the court did not err because substantial evidence supported the court's finding David failed to maintain regular visits with D.V. and Aiden.

David also argues the Los Angeles County Department of Children and Family Services failed to comply with its duty of inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.  Following an appeal by D.V. and Aiden's mother raising the same issue, we ordered the Department to comply with ICWA and related California law.  (See *In re David V.* (Aug. 8, 2023, B327092).)  We direct the juvenile court to provide the same relief in this case.  Therefore, we conditionally affirm the juvenile court's order with directions to ensure compliance with ICWA.

———————————————

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Juvenile Court Declares D.V. and Aiden Dependent Children of the Court*

In September 2018 the Department filed a petition in the juvenile court on behalf of D.V., who was two years old, and Aiden, who was one year old, alleging in counts under section 300, subdivisions (a) and (b), that David and the children's mother Kristian E. had a history of engaging in violent altercations in the children's presence and that the children's home was filthy and unsanitary. The juvenile court detained D.V. and Aiden, placed them with their maternal grandmother Maria L., and ordered monitored visitation for a minimum of three times per week for three hours per visit.

In October 2018 the juvenile court, after dismissing a count alleging Kristian had a history of substance abuse, sustained the petition, declared D.V. and Aiden dependent children of the court, and removed them from David and Kristian. The court ordered reunification services and monitored visitation. The reunification plan included a domestic violence program, individual counseling, and parenting classes.

B.     *The Juvenile Court Terminates Reunification Services and Sets a Hearing Under Section 366.26*

In April 2019 the Department reported David had not participated in any court-ordered programs or responded to the Department's efforts to contact him. At that time, D.V. and Aiden were temporarily placed with their paternal grandmother, but they moved back to Maria's home in September 2019 and

remained there throughout the dependency proceedings. The juvenile court terminated reunification services in May 2019.

In February 2021 the juvenile court granted Maria legal guardianship and terminated jurisdiction. In March 2022, however, Maria filed a section 388 petition asking the court to terminate the legal guardianship because she believed a younger person would be "better equipped" to care for D.V. and Aiden, who were then five and four years old. Maria asked the court to consider placing the children with a maternal cousin in Florida.

David opposed the request to place D.V. and Aiden with Kristian's cousin in Florida. He told the Department that he had recently enrolled in parenting and domestic violence classes and that he had not enrolled earlier because "his pride got in the way." He said that he had moved to Desert Hot Springs, California and did not have transportation to visit D.V. and Aiden as often as the court had permitted, but that he called them regularly and now had a car, which would allow him to visit them more often. He also said he wanted to complete the court-ordered programs and reunify with the children. After a hearing, the juvenile court granted Maria's section 388 petition, reinstated jurisdiction, and ordered an expedited assessment of the maternal cousin. The court also set the matter for a section 366.26 hearing.

C.    *David Visits D.V. and Aiden Inconsistently*

For the first three weeks after the children's detention, David visited D.V. and Aiden pretty much as permitted by the juvenile court. In the Department's April 2019 six-month review report, however, the children's paternal grandmother (with whom the children were temporarily placed) reported that David visited

the children only once a week for two to three hours, less than one-third the amount the juvenile court had authorized. David did not respond to communications from the Department during this six-month period.

In September 2019, after the court terminated reunification services, the children's paternal grandmother reported that David had stopped visiting altogether. By December 2019, David had resumed visiting the children two to three times per week. In May 2020, when the children were again living with Maria, Maria said David visited the children "consistently on a weekly basis" until the pandemic began. After that, she said, David visited them only twice.

In February 2021 the juvenile court reduced David's visitation to one visit per week. Maria reported in April 2022 that David had "intermittent contact" with D.V. and Aiden because he commuted from Desert Hot Springs where he lived with his mother. Maria said that there was "no consistent schedule," but that he had visited in the last week and a half.

In May 2022 Maria took the children to Desert Hot Springs to visit David. They swam at a hotel pool, drove "Go-Karts,"[2] and "had a lot of fun." It was also in May 2022 that David told the Department he had a car and planned to visit the children more often. But in June 2022 David did not see D.V. and Aiden for several weeks, and in July 2022 Maria again had to take the

---

[2] A "go-kart is 'a small low motor vehicle with four wheels and an open framework . . . .'" (*State ex rel. Town of Richmond v. Roode* (R.I. 2002) 812 A.2d 810, 814.) It is "typically driven on a closed course." (*Spot on Evergreen III, Inc. v. Washington State Liquor and Cannabis Bd.* (Wash.Ct.App. 2020) 13 Wash.App.2d 1008 [2020 WL 1853075, p. 5].)

children to Desert Hot Springs to visit David. The record does not indicate whether David visited D.V. and Aiden at any other time in July 2022. In August 2022 David attended the children's birthday party at Maria's home. Again, the record does not state whether David visited the children at any other time in August.

In a November 2022 status review report, the Department stated David visited D.V. and Aiden once or twice per month, which was less than half the visits the court had allowed. The Department's January 2023 section 366.26 report stated David maintained "regular contact" with the children, including phone calls, video calls, and in-person visits. Maria said David visited the children every other day when he was in Los Angeles, but the report did not indicate how long David typically stayed in Los Angeles. During his visits, David helped bathe and dress the children and ate meals with them. David spent approximately two weeks in Desert Hot Springs between visits to Los Angeles.

D. *The Juvenile Court Terminates David's Parental Rights to D.V. and Aiden, and David Timely Appeals*

At the section 366.26 hearing Maria testified and confirmed much of what she told the Department about David's visits with D.V. and Aiden. Maria said the children would be "sad" if they could not visit with their father, but not "traumatized." She explained that David was "in and out" and did not visit consistently, that this was "normal" for the children, and that they were not sad when David leaves. To the contrary, she said, when David leaves, the children "continue like nothing" happened and "just pick up where they left off."

The juvenile court found that D.V. and Aiden were adoptable and that the parental-benefit exception to adoption did

6

not apply.  The court ruled David did not maintain regular visitation with the children, finding that "at times there's been regular visitation and contact," but that "at other times it's been sporadic."  The court said that, when David is in Los Angeles "he drops in and sees the kids," but that when he is not in Los Angeles, "he doesn't particularly drop in and see the kids."

The court also found David failed to establish "a bond" with D.V. and Aiden.  The court ruled that "any benefit accruing to these children from their continued relationship with their father is outweighed by the physical and emotional benefit the children will receive through permanency and stability of adoption and that adoption is in the best interests of the children."  Regarding whether terminating parental rights would be detrimental to the children, the court, without making an affirmative, express finding to that effect, stated:  "It appears to the court that [David] was a mere playmate to these children.  He also did not participate in medical appointments, [and] he did not participate in school activities . . . .  He would show up on occasion, share a meal with his sons, and play with them, and that seemed to be the nature and the extent of the contact and the bond with the children.  There doesn't seem to be great issues with the boys detaching from . . . father when the visits terminate. . . .  We don't have outward signs of trauma to the children."  The court found "it would be detrimental to these children to be returned to the parents" and terminated David's parental rights.  David timely appealed.

**DISCUSSION**

A.    *The Juvenile Court Did Not Err in Ruling the Parental-benefit Exception Did Not Apply*

1.    *Applicable Law and Standard of Review*

The purpose of a hearing under section 366.26 is "'to select and implement a permanent plan for the child'" after the juvenile court has terminated reunification services. (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*); see *In re Christopher L.* (2022) 12 Cal.5th 1063, 1076; *In re D.M.* (2021) 71 Cal.App.5th 261, 268.) If the court determines "the child is likely to be adopted," the court must "terminate parental rights to allow for adoption." (*Caden C.*, at p. 630; see § 366.26, subd. (c)(1); *In re I.E.* (2023) 91 Cal.App.5th 683, 690.) "But if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan." (*Caden C.*, at pp. 630-631; see § 366.26, subd. (c)(1)(B), (4)(A).) One of those reasons, the parental-benefit exception, requires the parent to establish by a preponderance of the evidence (1) "the parent has regularly visited with the child," (2) "the child would benefit from continuing the relationship," and (3) "terminating the relationship would be detrimental to the child." (*Caden C.*, at p. 629; see § 366.26, subd. (c)(1)(B)(i); *In re M.V.* (2023) 87 Cal.App.5th 1155, 1183.)

"The first element—regular visitation and contact—is straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'" (*Caden C., supra*, 11 Cal.5th at p. 632; accord, *In re*

8

*M.V.*, *supra*, 87 Cal.App.5th at p. 1183; see *In re I.R.* (2014) 226 Cal.App.4th 201, 212 ["Regular visitation exists where the parents visit consistently and to the extent permitted by court orders."].)  "Visits and contact 'continue[ ] or develop[ ] a significant, positive, emotional attachment from child to parent.' [Citation.]  Courts should consider in that light whether parents 'maintained regular visitation and contact with the child' [citation] but certainly not to punish parents or reward them for good behavior in visiting or maintaining contact—here, as throughout, the focus is on the best interests of the child." (*Caden C.*, at p. 632; see *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1069-1070.)  Thus, "the visitation element is to be understood in light of the overall purpose of the beneficial relationship exception."  (*Eli B.*, at p. 1070.)

A juvenile court's decision that a parent has not satisfied his or her burden to establish the parental-benefit exception applies "may be based on any or all of the component determinations," including "whether the parent has maintained regular visitation."  (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 646-647, disapproved on another ground in *Caden C.*, *supra*, 11 Cal.5th at pp. 637, fn. 6, 638, fn. 7.)  Indeed, "a parent must prove *all three* components of the beneficial relationship exception," and a "failure of proof on any one of them is fatal." (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 322, fn. 10; see *In re Eli B.*, *supra*, 73 Cal.App.5th at p. 1068 [where the parent did not meet his or her burden to prove regular visitation, the reviewing court need not consider the other elements of the parental-benefit exception].)

We review the juvenile court's ruling on the first element of the parental-benefit exception for substantial evidence.

(*Caden C., supra*, 11 Cal.5th at p. 640; *In re Eli B.*, *supra*, 73 Cal.App.5th at p. 1068.)  In reviewing factual determinations for substantial evidence, we do not "'reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.'"  (*Caden C.*, at p. 640.)

> 2.   *Substantial Evidence Supported the Juvenile Court's Finding David Failed To Regularly Visit His Children*

David does not contest the facts underlying the juvenile court's determination he visited D.V. and Aiden sporadically. Indeed, he concedes that his visitation was not "perfect for a time due to the distance" from Desert Hot Springs, but he contends that, "viewing the life of the case, [he] maintained regular visitation and contact with the children."

The record does suggest David made efforts to visit his children and, when he could not see them in person, to maintain contact with them by phone and video calls.  But David's argument ignores substantial periods of time when he failed to visit D.V. and Aiden to the extent permitted by the juvenile court. For example, for at least six months (from the end of 2018 to early 2019) David visited the children for less than one-third the permitted amount.  For some part of 2019 David did not visit the children at all, and he only began visiting them again after the juvenile court terminated reunification services.  Despite the juvenile court reducing the number of weekly visits to one, the record indicates only a few periods of time when David visited the children as often as allowed (and David did not submit any evidence to the contrary or testify at the section 366.26 hearing). Even after David told the Department he had a car and would

10

begin visiting D.V. and Aiden more often, it appears he did not. Substantial evidence supported the juvenile court's finding David failed to maintain regular visitation. (See *In re Eli B.*, *supra*, 73 Cal.App.5th at pp. 1070-1071 [father failed to show regular visitation where his visitation "throughout the years-long dependency proceeding was sporadic and also entailed significant gaps"]; *In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 647 [evidence of sporadic visits in the first 18 months of the dependency proceedings, coupled with more regular visits during the final six months before the section 366.26 hearing, was not regular visitation]; *In re I.R.*, *supra*, 226 Cal.App.4th at p. 212 [parent failed to maintain regular visitation where there were "significant lapses in visits"].)

Citing *In re D.M.*, *supra*, 71 Cal.App.5th at page 270, David argues his visits over the course of the years-long dependency proceeding were sufficiently regular. In *In re D.M.*, however, the juvenile court found the parent's "'fairly consistent'" visitation met the first element of the parental-benefit exception, and the Court of Appeal held substantial evidence supported that finding. (*Ibid.*) That's not what happened here: The juvenile court here found David's visitation was not regular, and substantial evidence supported that finding. (See *In re M.R.* (2017) 8 Cal.App.5th 101, 108 ["we do not consider whether there is evidence from which the juvenile court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw"]; see also *In re I.J.* (2013) 56 Cal.4th 766, 773 ["'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'"].)

Because David has not shown the juvenile court erred in finding he failed to meet the first element of the parental-benefit exception, we need not address his arguments regarding the second and third elements. (*In re Eli B.*, *supra*, 73 Cal.App.5th at p. 1068; see *In re Katherine J.*, *supra*, 75 Cal.App.5th at p. 322, fn. 10.) The juvenile court did not err in terminating David's parental rights.

B. *David Is Entitled to the Same Relief Under ICWA and Related California Law That Kristian Obtained in Her Appeal*

David also challenges the juvenile court's finding ICWA does not apply. He argues the Department failed to comply with its obligations under ICWA and related California law to ask known relatives, including a maternal aunt, a maternal cousin, and the children's paternal grandmother, about D.V. and Aiden's possible Indian ancestry.

In her appeal from the juvenile court's order terminating her parental rights, Kristian similarly challenged the court's findings under ICWA and related California law. In that appeal we ordered the Department to interview known and available maternal and paternal relatives and extended family members, including those David identified in his brief on appeal. (*In re David V.*, *supra*, B327092.) We ordered: (1) The Department is to "make reasonable efforts to attempt to identify and thereafter to interview all maternal and paternal relative extended family members, not just those who previously have been identified, as well as others who have an interest in the children, regarding the children's possible Indian ancestry. [The Department] is to submit a report of its interviews or efforts to conduct the

12

interviews to the juvenile court."; (2) "If, based on the initial inquiry, there is reason to believe an Indian child may be involved but not yet sufficient information to determine if notice must be provided to a tribe or tribes, [the Department] is to conduct further inquiry pursuant to [section] 224.2, subdivision (e)."; (3) "At a noticed hearing, with counsel for the parents reappointed, the juvenile court is to ensure adequate inquiry and any necessary notice has been made and make ICWA findings as to the children. If the juvenile court finds . . . ICWA is not applicable, the order terminating parental rights shall remain the order of the court. If notice is required pursuant to . . . ICWA and a tribe determines [D.V.] or Aiden V. is an Indian child, the court shall proceed in compliance with . . . ICWA."; and (4) "At the conclusion of the proceedings addressing compliance with federal and state law related to . . . ICWA, and upon the juvenile court's findings and orders, the parties have the right to appeal from the renewed ICWA findings." (*David V.*, B327092.) We make the same order here: We direct the juvenile court to ensure the Department complies with ICWA and related California law as ordered in *In re David V.*, *supra*, B327092.

13

## DISPOSITION

The order terminating David's parental rights is conditionally affirmed.  The juvenile court is directed to ensure the Department complies fully with ICWA and related California law.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.

14